A97A0370. THOMAS et al. v. DeKALB COUNTY et al.
(489 SE2d 58)

RUFFIN, Judge.

Minnie Pearl Thomas died after being transported to Grady Memorial Hospital by DeKalb County paramedics Cynthia Studdard and Jeffery Bowman. The executors of Thomas' estate and her surviving spouse and children sued DeKalb County, Studdard, and Bowman for medical negligence, gross negligence, nuisance, deprivation of rights under 42 USC § 1983, wrongful death and loss of consortium. The trial court granted the defendants' motion for summary judgment, and the plaintiffs appealed. For reasons which follow, we affirm.

"To prevail at summary judgment under OCGA § 9-11-56, the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law. OCGA § 9-11-56 (c). A *defendant* may do this by showing the court that the documents, affidavits, depositions and other evidence in the record reveal that there is no evidence sufficient to create a jury issue on at least one essential element of plaintiff's case. . . . A defendant who will not bear the burden of proof at trial need not affirmatively disprove the nonmoving party's case; instead, the burden on the moving party may be discharged by pointing out by refer-

ence to the affidavits, depositions and other documents in the record that there is an absence of evidence to support the nonmoving party's case. If the moving party discharges this burden, the nonmoving party cannot rest on its pleadings, but rather must point to specific evidence giving rise to a triable issue. OCGA § 9-11-56 (e)." *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).

The record in this case shows that DeKalb County is licensed by the State of Georgia to provide ambulance services. On May 21, 1993, DeKalb County paramedics Studdard and Bowman received an emergency call that Thomas was having difficulty breathing and responded to her home. When the two paramedics arrived at the home, two firefighters from DeKalb County were already there. Studdard and Bowman parked their ambulance at the end of the driveway, told the firefighters they could handle the call, and allowed the firefighters to leave the scene.

The paramedics entered the house, and Bowman went to a back bedroom where Thomas was sitting on the edge of a bed. While Bowman was speaking with Thomas about her medical condition and taking her vital signs, Studdard obtained her medical history from family members who were present. Studdard and Bowman then briefly discussed their findings and determined they needed to transport Thomas to the hospital.

Although the plaintiffs presented evidence that there was no "heavy" furniture in the house, the paramedics stated that when they first walked into the house, they determined that they would not be able to get the stretcher to the back bedroom without moving "heavy looking pieces of furniture in the living room." Based on this observation, Bowman's experience, his prior medical assessment of Thomas, and the fact that Thomas stated "without any hesitation" that she could walk to the front door, Bowman decided that it would be "medically appropriate" for Thomas to walk approximately eight yards to the front door. Accordingly, while Studdard went to the ambulance to obtain a stretcher, Bowman removed Thomas' home oxygen in the bedroom and assisted her to the front door. Although Bowman stated that "[d]uring the walk to the door, [Thomas] did not appear to suffer from any strain[,]" a family member stated that "she was gasping for air" and "became exhausted."

When Bowman and Thomas arrived at the front door, Bowman had Thomas sit in a chair, put her on portable oxygen, and he and Studdard adjusted the stretcher. Both paramedics stated that Thomas became unresponsive halfway up the driveway, at which time Studdard removed the oxygen mask to attend to Thomas' breathing and prevent aspiration, while Bowman administered a precordial thump. According to a family member, however, after Thomas was placed on the stretcher, she became unconscious. The

family member stated that the paramedics pushed her 30 feet down the driveway and into the ambulance before administering any medical treatment.

Bowman and Studdard stated that when they arrived at the ambulance, Bowman administered another precordial thump which converted Thomas to sinus rhythm, and that they decided to put Thomas into the ambulance before working on her further because all of the equipment they needed was in the ambulance. After putting Thomas in the ambulance, the paramedics attempted to start an intravenous line and intubate her but were unsuccessful because of her obesity. The paramedics were able, however, to open Thomas' airway and administer oxygen through another procedure, and Bowman then called for a firefighter to drive the vehicle to the hospital so the two paramedics could continue to treat her. When assistance arrived, Thomas was transported to Grady Memorial Hospital while the two paramedics continued to monitor her breathing. Thomas died at the hospital approximately one week later. Both paramedics stated that they did everything they could to administer the best paramedic assistance within the standard of care recognized for emergency medical service paramedics.

Following the plaintiffs' complaint and discovery, the defendants moved for summary judgment on the grounds of sovereign immunity, qualified immunity, official immunity and immunity under OCGA § 31-11-8. The plaintiffs enumerate 13 grounds for reversal of the trial court's grant of summary judgment to the defendants.

1. The plaintiffs' assertion that the trial court erred in failing to issue findings of fact and conclusions of law is without merit. "The trial court is not required to make express findings of fact and conclusions of law in ruling on motions for summary judgment pursuant to OCGA § 9-11-56." (Citations and punctuation omitted.) *Dixie Diners &c. v. Gwinnett Fed. Bank, FSB,* 211 Ga. App. 364, 366 (1) (439 SE2d 53) (1993).

2. The plaintiffs assert that the trial court erred in granting summary judgment because material issues of fact exist concerning whether the defendants were entitled to immunity under OCGA § 31-11-8. We disagree.

In recognition of the public interests served by ensuring that quality, affordable, emergency medical services are available to the people of Georgia, the General Assembly has provided immunity from civil liability to certain providers of such services. See OCGA § 31-11-1 (a); *Anderson v. Little & Davenport Funeral Home,* 242 Ga. 751, 754 (2) (251 SE2d 250) (1978). As the Supreme Court explained in *Anderson,* the General Assembly has recognized that the expense and difficulty of obtaining insurance, "combined with the virtually unlimited potential civil liability, could be enough to drive many

providers of ambulance service out of the business and greatly discourage others from entering. The effect, in many areas of the state, would be to make emergency ambulance service virtually unobtainable. In recognition of this, the legislature chose to grant immunity from civil liability to providers of such emergency services who were licensed under the Act." Id. at 754-755.

OCGA § 31-11-8 (a) thus provides immunity under the following terms: "Any person, including agents and employees, who is licensed to furnish ambulance service and who in good faith renders emergency care to a person who is a victim of an accident or emergency shall not be liable for any civil damages to such victim as a result of any act or omission by such person in rendering such emergency care to such victim." The immunity provided by OCGA § 31-11-8 (a) applies "only to those persons who perform the . . . emergency services for no remuneration." OCGA § 31-11-8 (c). "Persons" protected under the statute include governmental agencies other than those of the United States and, as stated in the statute, agents and employees of those agencies. OCGA §§ 31-11-2 (18); 31-11-8 (a).

In this case, it is undisputed that at the time of Thomas' emergency call, Studdard and Bowman were employees of DeKalb County, which was properly licensed by the Department of Human Resources to provide ambulance services. It is also clear that although the county charged fees to defray a portion of the costs of the services provided, those fees did not constitute remuneration. *Ramsey v. City of Forest Park*, 204 Ga. App. 98, 100-101 (2) (d) (418 SE2d 432) (1992). Accordingly, if the defendants rendered the emergency care to Thomas in "good faith," they would be entitled to immunity from Thomas' state law claims. See *Anderson*, supra at 754.

In *Anderson*, the Court defined "good faith" as " 'a state of mind indicating honesty and lawfulness of purpose; belief that one's conduct is not unconscionable or that known circumstances do not require further investigation.' " (Citation omitted.) Id. at 753 (1). Although in other contexts we have ruled that "good faith" is always a jury question, see, e.g., *Ginn v. C & S Nat. Bank*, 145 Ga. App. 175, 177 (1) (243 SE2d 528) (1978) (addressing "good faith" under Uniform Commercial Code), we believe that blind application of that rule in this context would defeat the substantial policy considerations underlying the immunity provided by OCGA § 31-11-8. Such an application would force all emergency care providers protected by the statute to incur the substantial costs associated with defending an action through trial, which itself could be enough to "drive many providers of ambulance service out of the business and greatly discourage others from entering." *Anderson*, supra at 754. Thus, we believe greater scrutiny should be given to evidence of whether a defendant acted in good faith. Although it is true that evidence of

good faith is not easily susceptible of direct proof, " 'frequently the state of mind accompanying the doing of an act is illustrated by other acts of a similar nature, done or proposed by the defendant in such a way as to indicate a general practice or course of conduct, or as to display motive, knowledge, intent, good faith, bad faith, and a variety of other such things. (Cits.)' [Cit.]" *American Game &c. v. Knighton*, 178 Ga. App. 745, 746-747 (2) (344 SE2d 717) (1986).

Throughout their appellate brief, the plaintiffs in this case cite several facts which they contend evidence bad faith: the defendants parked their ambulance at the end of the driveway, dismissed the firefighters from the scene, did not bring all their equipment in the house, removed Thomas' oxygen in the bedroom, made her walk to the front door, and pushed her 30 feet down the driveway to the ambulance before administering any medical treatment. The entirety of the evidence, however, shows that these, and the other actions taken by the defendants, were all directed at saving Thomas' life. At the time the paramedics dismissed the firefighters, nothing indicated their presence was necessary. The paramedics quickly entered the home in an emergency situation and evaluated Thomas' current medical condition and past medical history. Without delay, they determined that hospitalization was necessary and evaluated the safest and most expedient way of transporting her to the ambulance. Even if they did not administer treatment until they pushed her 30 feet to the ambulance, the evidence shows that is where their equipment was located. Once inside the ambulance, the paramedics went to considerable means to restore and maintain a clear breathing passageway.

Finally, plaintiffs cite as evidence expert affidavits of two physicians who concluded that the "breaches of duty in the care and treatment of [Thomas] by the DeKalb County Paramedics" ultimately caused her death. Although the defendants contend that neither physician was competent to render such an opinion, we need not consider that issue here because we find the conclusions of negligence insufficient to create a jury issue. Even if the paramedics exercised bad judgment and acted negligently, such does not amount to a lack of good faith. See *Michaels v. Gordon*, 211 Ga. App. 470, 473 (2) (b) (439 SE2d 722) (1993). As stated above, "good faith" is " 'a state of mind indicating honesty and lawfulness of purpose; belief that one's conduct is not unconscionable or that known circumstances do not require further investigation.' " (Citation omitted.) *Anderson*, supra at 753 (1). Nothing in the record evidences a lack of good faith under this definition.

Even if hindsight might show that some things could have been done differently, the totality of the paramedics' actions shows that throughout the entire incident, both acted in good faith with the

intent to save Thomas' life. Accordingly, because OCGA § 31-11-8 provides immunity against liability for such conduct, the trial court did not err in granting the defendants summary judgment on the plaintiffs' state law claims.

3. The trial court also correctly granted the defendants summary judgment on the plaintiffs' claim under 42 USC § 1983.

"Section 1983 imposes liability where persons acting under color of state law have deprived an individual of a federal constitutional or statutory right. [Cit.]" *Hendon v. DeKalb County*, 203 Ga. App. 750, 757 (3) (417 SE2d 705) (1992) (physical precedent only). See also *Cleveland v. Fulton County*, 196 Ga. App. 168, 169 (1) (396 SE2d 2) (1990). The plaintiffs here have cited no evidence showing the paramedics violated any of Thomas' federal statutory rights and "[f]ederal constitutional law does not require a state to provide its citizens with protective services in the event of medical emergencies. Even if the state undertakes to provide such services, its failure to render same in a proper manner or in violation of state law does not violate the Due Process Clause of the United States Constitution, unless the state created the medical emergency or the person was in state custody or control at the time of the emergency. [Cits.]" *Hendon*, supra at 757 (3), citing *Cleveland*, supra. Because there is no evidence that DeKalb County created Thomas' emergency, and she was not in the county's custody or control, the plaintiffs have failed to establish this threshold element necessary to their 42 USC § 1983 claim. *Cleveland*, supra at 169-170 (1).

4. In light of our conclusions above, it is unnecessary to address the plaintiffs' remaining assertions that the defendants were not protected by other state and federal law immunities.

*Judgment affirmed. Birdsong, P. J., and Eldridge, J., concur.*

DECIDED JUNE 27, 1997 —
RECONSIDERATION DENIED JULY 10, 1997.

*Gordon G. Greenhut*, for appellants.
*Jonathan A. Weintraub, Joan F. Roach, Elizabeth T. Marinelli*, for appellees.