A01A0438. MARTIN et al. v. FULTON-DEKALB HOSPITAL AUTHORITY et al.
(551 SE2d 415)

POPE, Presiding Judge.

Christine and John Martin, individually and as parents and natural guardians of Kelsey Hope Martin, filed this action for medical malpractice against seven defendants including the appellees here, Erin York, registered nurse, Sheri Holt, registered respiratory therapist, and Fulton-DeKalb Hospital Authority d/b/a Grady Memorial Hospital d/b/a Grady Health System. The state court granted summary judgment to these defendants; the case remains pending for trial as to defendants Stephens County Hospital and Donna Grafton, RN. The Martins appeal. For the following reasons, we agree with the Martins that the Medicaid payment here constituted "remuneration" under OCGA § 31-11-8 and that, accordingly, the immunity provided by that statute does not apply. Accordingly, we reverse the portion of the order that the Martins appeal.

The Martins' complaint alleged that on November 2, 1995, Kelsey Martin was brought to Stephens County Hospital after she was born prematurely at 26-28 weeks at home. The complaint stated that Kelsey Martin was treated at Stephens County Hospital and then it was necessary to transfer her to a facility with a neonatal intensive care unit. A neonatal transport team from Grady Health Systems, which included York, RN, and Holt, RRT, transported the baby to Crawford Long Hospital. Mr. and Mrs. Martin alleged that in the course of treating their daughter, either the defendants here, or the other defendants who are not party to this appeal, administered an overdose of a blood thinner, heparin, which caused Kelsey Martin to bleed excessively in her brain, causing brain damage and physical and mental impairments.

Grady Health Systems, York, and Holt filed a motion for summary judgment arguing that they were entitled to statutory immunity under OCGA § 31-11-8 (c), which provides immunity for certain ambulance services which perform the requisite "emergency services for no remuneration." The defendants also argued that they were entitled to summary judgment on the basis of sovereign immunity, charitable immunity, statutory immunity under OCGA § 51-1-29.1, and official immunity for defendants York and Holt.

After hearing oral argument, the court partially granted and partially denied defendants' motion. In doing so, the court found that the requirements under OCGA § 31-11-8 were satisfied and that defendants Grady, York, and Holt were entitled to that statutory immunity. In the alternative, the court found that Grady was entitled to charitable immunity, and it also granted Grady's motion on that basis.[1] In so concluding, the court found that defendants York and Holt were not entitled to charitable immunity. The court rejected the defendants' other arguments, finding that they were not entitled to sovereign or official immunity.

In their sole enumeration of error, the Martins argue that Grady was paid for its emergency services, that the immunity of OCGA § 31-11-8 does not apply, and that the trial court erred in granting summary judgment on that basis. The Martins do not challenge here the other portions of the court's ruling.[2] With respect to the statutory immunity issue, the Martins argue that this case is distinguishable from prior decisions of this court finding an absence of remuneration. Furthermore, they argue that for various policy reasons, there

---

[1] Nevertheless, the court found that Grady's excess insurance coverage constituted a waiver of immunity to the extent of that insurance.

[2] Although the Martins contend that the court's decision that Grady was immune from this suit under the doctrine of charitable immunity was erroneous, they did not appeal that portion of the court's order, and thus we do not review the charitable immunity issue here.

should not be immunity under the statute for Medicaid recipients.

In response, the defendants argue that OCGA § 31-11-8 should be liberally construed and that it provides immunity in this case. They contend that the Medicaid payments did not cover medical services while Kelsey Martin was aboard the ambulance and that the payment was analogous to "transportation fees," which do not invoke the statute's immunity.

Based on the following, we agree with the Martins' argument that there was no immunity under OCGA § 31-11-8. The record contains evidence regarding Georgia's comprehensive health plan for providing neonatal intensive care for infants. Under this plan Grady, through its contract with the Georgia Department of Human Resources, owns and operates the Emory Regional Perinatal Center Neonatal Ambulance Service. Grady performs virtually all neonatal transports within the North Georgia region, and Grady was responsible for the transport of Kelsey Martin.

Kelsey Martin was a Georgia Medicaid recipient and had no private insurance. Grady had contracted with the Georgia Department of Medical Assistance to provide medical services to Georgia's Medicaid recipients. Under the contract, Grady agreed that it would be reimbursed for services provided to Medicaid patients as provided for in the Georgia State Plan for Medical Assistance, which is implemented by the policies and procedures of the Georgia Medical Assistance Program and published in the Department's Policy & Procedure manual. That manual's division for Emergency Ambulance Services provided that: Grady would bill the Department its "usual and customary fee" for services rendered; Grady would be "reimbursed" for services provided to Medicaid patients; and Grady would accept the Medicaid payment "as payment in full" for the covered services. The reimbursement plan contained in this agreement provided fixed rates for the various ambulance services.

The undisputed evidence showed that Grady, following these procedures, billed Medicaid its "usual and customary fee" for the ambulance services rendered to Kelsey Martin; the cost of these services was $4,563.99.[3] The remittance indicated that it covered "ambulance service" and mileage. Medicaid reimbursed Grady according to its reimbursement plan — in 1995 Medicaid's standard reimbursement rate was $214.01 for an advanced life support transport, plus mileage of $4.12 a mile after the first ten miles, and oxygen at a flat rate of $29.11. For Kelsey Martin's transport, Medicaid paid $626.28, leaving a remaining balance of $3,937.71. This balance was

---

[3] There is a slight discrepancy regarding the amount Medicaid was billed — evidence indicates that the bill was either $4,563.99 or $4,623.99. This factual discrepancy is, however, irrelevant to the disposition of the case.

not recovered from any source. The record also shows that Grady received and accepted the Medicaid reimbursement for the services provided to Kelsey Martin as "payment in full," as required by the procedures manual.

In determining whether the immunity provided by OCGA § 31-11-8 applies, we first turn to the statute itself. OCGA § 31-11-8 (a) provides:

[a]ny person, including agents and employees, who is licensed to furnish ambulance service and who in good faith renders emergency care to a person who is a victim of an accident or emergency shall not be liable for any civil damages to such victim as a result of any act or omission by such person in rendering such emergency care to such victim.

Before analyzing the dispositive issue of remuneration, we note that the other requirements of OCGA § 31-11-8 (a) were met. The state court determined that the defendant Hospital Authority was entitled to furnish ambulance services; that the defendants rendered emergency care to the victim; and that the defendants acted in good faith. And, the parties do not dispute these other portions of the statute.

Subsection (c) of the statute defines its applicability: "[t]he immunity provided in this Code section shall apply only to those persons who perform the aforesaid emergency services for no remuneration."

OCGA § 31-11-2 defines various components of the statutory scheme; subsection (4) states: "'Ambulance service' means the providing of emergency care and transportation on the public streets and highways of this state for a wounded, injured, sick, invalid, or incapacitated human being to or from a place where medical or hospital care is furnished."

Our courts have addressed this statutory framework in several cases. In *Thomas v. DeKalb County*, 227 Ga. App. 186, 188 (2) (489 SE2d 58) (1997), this court analyzed the policy motivations behind the immunity statute. Citing *Anderson v. Little &c. Funeral Home*, 242 Ga. 751, 754 (2) (251 SE2d 250) (1978), this court stated:

the General Assembly has recognized that the expense and difficulty of obtaining insurance, combined with the virtually unlimited potential civil liability, could be enough to drive many providers of ambulance service out of the business and greatly discourage others from entering. The effect, in many areas of the state, would be to make emergency ambulance service virtually unobtainable. In recognition of this, the legislature chose to grant immunity from civil lia-

bility to providers of such emergency services who were licensed under the Act.

(Punctuation omitted.) *Thomas*, 227 Ga. App. at 188-189 (2). In *Thomas*, the defendants were DeKalb County paramedics, who had transported the decedent to Grady Memorial Hospital. The court found that although DeKalb County charged fees to defray a portion of the costs of the services provided, "those fees did not constitute remuneration," so as to void the statutory immunity. Id. at 189 (2). The *Thomas* court did not reveal the amount of the fees which the county charged to defray the costs; this court upheld the trial court's grant of summary judgment to the defendants on the basis of the statutory immunity.

In reaching its conclusion, the *Thomas* court relied on this court's decision in *Ramsey v. City of Forest Park*, 204 Ga. App. 98 (2) (418 SE2d 432) (1992). In *Ramsey*, this court concluded that there was no "remuneration" to invalidate the immunity provided by OCGA § 31-11-8. There the City of Forest Park was duly licensed by the Georgia Department of Human Resources to provide ambulance services and had responded to an ambulance emergency call at the plaintiffs' home. In affirming the trial court's grant of summary judgment to the city, this court analyzed the meaning of "remuneration" within the meaning of OCGA § 31-11-8 (c). The court decided that although the municipality had levied a "transportation charge against those persons transported to a hospital," the "remuneration" was not sufficient to render the statute inapplicable. The court stated:

> [I]t appears to have been the intent of the General Assembly not to vest immunity in those "persons" who were being *rewarded* for the performance of "emergency services." We are satisfied that a *fee* charged by a *governmental organization* to assist in defraying the administrative costs of "transporting a person to a hospital" is not the equivalent of receiving *remuneration* for providing stated "emergency care," within the meaning of OCGA § 31-11-8 (c). What may constitute a remuneration to a private "person" may not reward and constitute remuneration to a governmental organization having to control its public expenditures carefully while providing "emergency medical services" to those within its boundaries. And, OCGA § 31-11-8 (c) must be liberally construed so as not to thwart the public policy purpose reflected in OCGA § 31-11-1.

(Emphasis in original.) *Ramsey*, 204 Ga. App. at 101 (2) (d). Although

this court did not discuss the amount of the "transportation charge" in *Ramsey*, the Martins introduced evidence in the court below that the City of Forest Park charged between $75 and $200 for the transport, depending upon whether it was inside Clayton County and whether the patient was a resident or nonresident. See also *Bixler v. Merritt*, 244 Ga. App. 82 (534 SE2d 837) (2000).

After duly considering these authorities, we agree with the Martins that the payment Medicaid made to Grady constituted "remuneration" so as to render the immunity of OCGA § 31-11-8 inapplicable. While we recognize that OCGA § 31-11-8 must be liberally construed, we cannot distort the words of the statute. See *Anderson*, 242 Ga. at 752 (1). Unlike the "transportation charge" in *Ramsey*, the charge here, which Medicaid partially paid, was for "ambulance services." And, although the payment did not completely reimburse Grady, it was not simply payment of an "administrative fee."[4] In reaching this conclusion, we reject the defendants' argument that because Medicaid did not specifically reimburse for medical care, the payment should not be considered "remuneration." There is no requirement under OCGA § 31-11-8 (c) that the "emergency services" rendered specifically denote medical intervention. See *Anderson*, 242 Ga. at 753 (1) (" 'emergency care' " under OCGA § 31-11-8 "could only mean the performance of necessary personal services during an unforeseen circumstance that calls for immediate action").

We also note that our conclusion here comports with the resolution of other issues surrounding Medicaid. See, e.g., *Toal v. DeKalb Med. Center,* 247 Ga. App. 349, 350 (542 SE2d 184) (2000) (involving claims by hospitals against the Georgia DMA that DMA's Medicaid reimbursements to the hospitals breached the terms of their respective provider agreements and did not comply with "a provision of the Medicaid Act known as the Boren Amendment[, which] required that state plans must provide for hospitals to be reimbursed at rates 'which the State finds, and makes assurances satisfactory to the Secretary (of [the Department of Health & Human Services]), are reasonable and adequate to meet the costs which must be incurred by efficiently and economically operated facilities' ").

Nevertheless, we emphasize that our determination that the payments in this case constituted "remuneration" under OCGA § 31-11-8 shall have no bearing on other questions raised by Medicaid

---

[4] Though not argued by the parties, we note that "a claim of immunity under OCGA § 31-11-8 cannot be waived by those persons to whom the statute applies; and among those persons to whom the statute applies are municipalities and counties, as they are an organization of any kind, including any governmental agency other than of the United States. OCGA § 31-11-2 (18)." (Citation and punctuation omitted.) *Johnson v. Gwinnett County*, 215 Ga. App. 79, 80 (1) (449 SE2d 856) (1994).

payments, such as the charitable immunity issues involved in this case. As stated above, this appeal involves only the state court's resolution of the immunity issue under OCGA § 31-11-8. Accordingly, the other portions of the court's order are unaffected.

*Judgment reversed. Blackburn, C. J., and Miller, J., concur. Mikell, J., not participating.*

DECIDED JULY 2, 2001 —
RECONSIDERATION DENIED JULY 19, 2001 — 

*Henry, Spiegel, Fried & Milling, Philip C. Henry, Harvey R. Spiegel, Roberts C. Milling II*, for appellants.

*Alston & Bird, Victoria M. Davis, Cari K. Dawson, Bernard Taylor*, for appellees.