**FIRST DIVISION**
**BARNES, P. J.,**
**MCMILLIAN and REESE, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**February 26, 2019**

# In the Court of Appeals of Georgia

A18A1662. ORTEGA et al. v. COFFEY et al.

BARNES, Presiding Judge.

Following the death of her husband and injury of her minor son in a vehicle accident, Mary Ortega, as surviving spouse and administrator of the estate of Armando Ortega and the parent and guardian of Armando Ortega, Jr., filed a complaint for damages against Okefenokee Emergency Medical Services, Inc., d/b/a Atkinson County Emergency Medical Service ("Okefenokee EMS"), Atkinson County,[1] and David Coffey, the Atkinson County Road Superintendent, in his individual capacity. Ortega claimed that Okefenokee EMS had failed to properly and timely address the injuries to her husband and son, and that Coffey had failed to

---

[1] The County was dismissed from the suit with prejudice and is not a party to this appeal.

inspect and maintain the roadway which caused her husband's death and son's injuries. Okefenokee EMS and Coffey filed motions for summary judgment, which the trial court granted upon concluding that both defendants were immune from liability. Ortega appeals from those orders and contends that Coffey was not entitled to official immunity because he was negligent in the performance of his ministerial duties. She also contends that Okefenokee EMS was not entitled to statutory immunity because her claims were brought for its failure to render emergency services rather than for its rendition of emergency services, and because any services that were rendered were for remuneration. Upon our review, we affirm the trial court's grant of summary judgment to Coffey, but reverse the grant of summary judgment to Okefenokee EMS.

1. We first note that Ortega's brief fails to comply with our rules in that significant portions of the factual premises in her appellate brief are not supported by the record other than to an all-inclusive 100-page record citation, specifically "R: 57-162." She cites critical facts, including quotes from various deposition testimony, but rather than provide specific citations to the record, she either broadly cites "R: 57-162" or "Id." This Court is not charged with culling the record on behalf of a party. *Hicks v. State*, 337 Ga. App. 567, 569 (1) (788 SE2d 502) (2016). See Court of

2

Appeals Rule 25 (c) (2). Thus, "[i[f we have omitted any fact or failed to locate relevant evidence, the responsibility lies with counsel." *In the Interest of C. T.*, 286 Ga. App, 186, 186 (1) (648 SE2d 708) (2007).

2. As to Ortega's substantive claims,

[s]ummary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Summary judgments enjoy no presumption of correctness on appeal, and an appellate court must satisfy itself de novo that the requirements of OCGA § 9-11-56 (c) have been met. In our de novo review of the grant of a motion for summary judgment, we must view the evidence, and all reasonable inferences drawn therefrom, in the light most favorable to the nonmovant.

(Citations and punctuation omitted.) *Ga. Farm Bureau Mut. Ins. Co. v. Claxton*, 345 Ga. App. 539, 539 (812 SE2d 167) (2018). See OCGA § 9-11-56 (c).

So viewed, the evidence demonstrates that on February 22, 2015, Ortega's husband was driving his Dodge Ram truck on Harvey Newbern Road in Atkinson County. Ortega's twelve-year-old son was also in the truck. As the two traveled down Newbern Road, the husband hit a hole in the road, and "almost lost control" of his truck, but he was able to regain control of the truck until he hit a second hole in the

3

road and "lost control and . . . hit [a] tree." The police were already on the scene when Okefenokee EMS responded to the accident, and the fire department was either on the scene or arrived shortly thereafter. One of the emergency medical technicians ("EMT") approached the seriously injured husband who was trapped on the driver's side of the truck, and another attended to the son who was seated on the passenger side. According to the son, an EMT asked him whether he was okay, and the son asked the EMT to check on his unconscious father but the EMT responded that "we've got to get you out first." The son testified that an EMT then instructed him to "jump off the truck," and when the son said that he could not jump because his leg was injured, he was told that "that's how you're going to have to get off." When the son jumped, he heard a pop and it "really, really hurt," but he "had to walk" to the stretcher. The son also testified that the EMTs did not immediately attend to his father and that they should have "went ahead and worked on him." The son was aware that the father was trapped but testified that the EMTs could have "work[ed] on the trapped door [when] [he] told them [he] was okay." The father, who was unresponsive but breathing, was removed from the truck and placed in the ambulance with the son. The husband stopped breathing while he was in the ambulance, and the EMTs

4

attempted to resuscitate the husband during the trip to the hospital, but he died of his injuries.

The EMT who assisted the son was deposed and testified that he removed the son from the truck with the assistance of other first responders. He testified that the son "was picked up and brought out of the truck . . . and laid onto a spineboard, at which time we put the C-collar [on him] . . . and put the head blocks . . . on him . . . and then we carried him around to the ambulance." The EMT who assisted the husband testified that when he arrived at the accident scene, the father was trapped, breathing but unresponsive. He testified that despite the husband being trapped he was able to climb into the vehicle from the passenger side and place the husband on oxygen.

*(a) Grant of Summary Judgment to Appellee Coffey.*

In granting summary judgment to Coffey, the trial court found that Ortega failed to establish that Coffey had a ministerial duty to maintain the roads and had breached that duty. The trial court further found that any duty Coffey had to maintain or repair the road was discretionary and that Ortega thus had to demonstrate that Coffey acted with actual malice in the performance of his duty, and had not done so. After so finding, the trial court concluded that "because there is no evidence that

Coffey negligently performed a ministerial act or acted with actual malice, he is entitled to official immunity and summary judgment is appropriate." We agree.

"[A] suit against a public official in his or her individual capacity is barred by official immunity where the public official has engaged in discretionary acts that are within the scope of his or her authority, and the official has not acted in a wilful or wanton manner; with actual malice; or with the actual intent to cause injury." *Brown v. Penland Constr. Co.*, 281 Ga. 625, 625-626 (641 SE2d 522) (2007). See Ga. Const. of 1983, Art. I, Sec. II, Par. IX (d). However, the Georgia Constitution "provides no immunity for ministerial acts negligently performed." *Gilbert v. Richardson*, 264 Ga. 744, 753 (6) (452 SE2d 476) (1994). "The issue of [Coffey's] immunity is a question of law[.]"*Pearce v. Tucker*, 299 Ga. 224, 227 (787 SE2d 749) (2016).

> A ministerial act is commonly one that is simple, absolute, and definite, arising under conditions admitted or proved to exist, and requiring merely the execution of a specific duty. A discretionary act, however, calls for the exercise of personal deliberation and judgment, which in turn entails examining the facts, reaching reasoned conclusions, and acting on them in a way not specifically directed.

(Citation and punctuation omitted.) *Common Cause/Ga v. City of Atlanta*, 279 Ga. 480, 482 (2) (614 SE2d 761) (2005). Instructions or procedures sufficient "to cause

6

an act to become merely ministerial must be so clear, definite and certain as merely to require the execution of a relatively simple, specific duty." (Punctuation and footnote omitted.) *Barnard v. Turner County*, 306 Ga. App. 235, 238 (1) (701 SE2d 859) (2010). "A ministerial duty may be established by evidence such as a written policy, an unwritten policy, a supervisor's specific directive, or a statute." (Citations omitted.) *Roper v. Greenway*, 294 Ga. 112, 114-115 (751 SE2d 351) (2013).

Ortega alleged in the complaint that "Coffey had duties to inspect, maintain and repair [the] roadway upon notice of an unsafe or dangerous condition that could cause injury to motorists." Ortega further alleged that Coffey had "breached his ministerial and discretionary duties by failing to inspect said roadway upon notice of an unsafe or dangerous condition and to maintain and/or repair said roadway." Ortega testified that she had complained to Coffey about the poor condition of the road, and also submitted affidavits from her mother and father averring that they "lived off of the [subject] road for many years," and had also "routinely complain[ed]" about the poor condition of the road.

However, there was no evidence of any policy, written or unwritten, directive or law establishing the manner in which Coffey was required to inspect, repair or maintain the roadway. Instead, the evidence demonstrated that, although as road

superintendent Coffey was responsible for maintaining the county roadways, there were no required scheduled inspections and no written policy, instructions or directions about how the roadways should be maintained or how to respond to issues with the roadways. Coffey testified that it was at his discretion "what roads we grade," and his discretion on how to respond to problems with the roadways. The Chairman of the Atkinson County Board of Commissioners averred that the county did not have "a policy, practice or standing order requiring repairs to a county road," or "requiring documentation and investigation of citizen complaints." This evidence, even viewed in a light most favorable to Ortega, shows that there were no clear, definite, and certain instructions, directives or policies related to the maintenance of the road. Instead, the uncontroverted evidence showed that Coffey exercised personal deliberation and judgment to maintain the roadways and such actions were discretionary. See *Brown v. Taylor*, 266 Ga. App. 176, 176-177 (596 SE2d 403) (2004) (acts were discretionary when evidence showed that the county did not have a formal written policy on inspecting and repairing roads, and that roads were maintained on an "as needed" basis); *Norris v. Emanuel County*, 254 Ga. App. 114, 118-119 (2) (561 SE2d 240) (2002) (decision on road repair was discretionary); *Coffey v. Brooks County*, 231 Ga. App. 886, 889 (2) (b) (500 SE2d 341) (1998), rev'd

8

in part on other grounds, *Rowe v. Coffey*, 270 Ga. 715 (515 SE2d 375) (1999) (decisions as to when to repair or barricade various roads were "discretionary resource-allocation decisions" protected by official immunity); *Kordares v. Gwinnett County*, 220 Ga. App. 848, 851 (470 SE2d 479) (1996) (absent county procedure dictating the method of inspection, road official's alleged negligent inspection was discretionary).

However, the distinction between discretionary and ministerial acts does not completely foreclose Coffey's potential liability; he may be held liable if in the exercise of his discretionary duty, Ortega can demonstrate that Coffey acted with actual malice or with the intent to cause injury. *Brown*, 281 Ga. at 625-626. Ortega's contention that Coffey acted with "reckless disregard for the safety of others" does not so demonstrate.

The Supreme Court has held that "the term 'actual malice' denote[s] 'express malice or malice in fact.'" (Citation, punctuation and footnote omitted) *Phillips v. Hanse*, 281 Ga. 133, 135 (2) (637 SE2d 11) (2006). "[A]ctual malice [is] something more than implied malice, which . . . [has] been defined to mean conduct exhibiting a reckless disregard for human life." (Citation, punctuation and footnote omitted.) Id. See *Merrow v. Hawkins*, 266 Ga. 390, 391-392 (467 SE2d 336) (1996) ("actual

9

malice" does not include "implied malice," i.e., the reckless disregard for the rights or safety of others); *Murphy v. Bajjani*, 282 Ga. 197, 203 (4) (647 SE2d 54) (2007) ("'A deliberate intention to do wrong' such as to constitute the actual malice necessary to overcome official immunity must be the intent to cause the harm suffered by the plaintiffs.")

As such, Ortega's contention that Coffey action with reckless disregard for the safety of others does not allege the actual malice necessary to overcome official immunity for discretionary acts." (Citations omitted.) Id. at 203-204 (4).

It follows that the trial court did not err in granting summary judgment to Coffey on the basis of official immunity.

*(b) Grant of Summary Judgment to Okefenokee EMS*

Ortega also argues that the trial court erred in finding that Okefenokee EMS was entitled to immunity pursuant to OCGA § 31-11-8 which provides in relevant part that,

> (a) Any person, including agents and employees, who is licensed to furnish ambulance service[2] and who in good faith renders emergency

---

[2] "Ambulance service" means, "The providing of emergency care and transportation on the public streets and highways of this state for a wounded, injured, sick, invalid, or incapacitated human being to or from a place where medical or

10

care to a person who is a victim of an accident or emergency shall not be liable for any civil damages to such victim as a result of any act or omission by such person in rendering such emergency care to such victim.

. . .

(c) The immunity provided in this Code section shall apply only to those persons who perform the aforesaid emergency services for no remuneration.

Unlike sovereign immunity, "a claim of immunity under [this Code Section] cannot be waived by those persons to whom the statute applies[.]"(Citation and punctuation omitted.) *Johnson v. Gwinnett County*, 215 Ga. App. 79, 80 (1) (449 SE2d 856) (1994).

In her claims against Okefenokee EMS, Ortega asserted that the ambulance service violated OCGA § 46-9-132 by intentionally or negligently failing to render the necessary care to her husband and son.[3] According to Ortega, Okefenokee EMS

---

hospital care is furnished[.]"OCGA § 31-11-2 (4) (A).

[3] "[A] common carrier of passengers is not an absolute and unqualified insurer of the safety of its passengers. Instead, a carrier of passengers must exercise extraordinary diligence to protect the lives and persons of his passengers but is not liable for injuries to them after having used such diligence." (Footnotes, punctuation and emphasis omitted.) *Laidlaw Transit Svcs. v. Young*, 299 Ga. App. 785, 786-787

intentionally or negligently violated OCGA § 46-9-132 by instructing her injured son to jump from the truck and walk to the stretcher, and in failing to appropriately or timely address her husband's injuries. Ortega also asserted a negligence claim for Okefenokee EMS's actions.

In granting summary judgment to Okefenokee EMS, the trial court found that the ambulance service was immune from civil liability pursuant to OCGA § 31-11-8, because, even accepting as true Ortega's allegation that Okefenokee EMS delayed care to her husband while he was trapped in the truck and such delay resulted in his death, and her allegation that Okefenokee EMS exacerbated or caused her son's hip injury when they instructed him to jump down from the truck and walk to the ambulance, the allegations did not rise to the level of demonstrating bad faith. The trial court also found the ambulance service was immune from liability because it did not receive remuneration for its services.

On appeal, Ortega first contends that OCGA § 31-11-8 does not apply in this case because liability arose from Okefenokee EMS's failure to render aid or

---

(683 SE2d 872) (2009). See OCGA § 46-9-132 ("A carrier of passengers must exercise extraordinary diligence to protect the lives and persons of his passengers but is not liable for injuries to them after having used such diligence.")

emergency services, rather than its rendition of emergency services.[4] We are not persuaded.

The statute provides that immunity attaches "as a result of any *act or omission* by such person in rendering such emergency care to such victim." (Emphasis supplied.) OCGA § 31-11-8 (a). "Emergency care" has been defined as "the performance of necessary personal services during an unforeseen circumstance that calls for immediate action." *Anderson v. Little & Davenport Funeral Home*, 242 Ga. 751, 753 (1) (251 SE2d 250) (1978).

Here, Ortega alleged that Okefenokee EMS delayed treating her husband for "at least fifteen minutes (15) until he was in the ambulance," and that during the delay had "not administered any resuscitative efforts." Ortega also alleged, among other things, that Okefenokee EMS had denied her son "assistance to the ambulance requiring him to jump from the wrecked vehicle and walk," had directed him to jump from the wrecked vehicle, and that this medical treatment was negligent.

---

[4] Ortega does not assert that Okefenokee EMS did not act in good faith in rendering its medical care. See OCGA § 31-11-8 (a); *Bixler v. Merritt*, 244 Ga. App. 82, 83 (534 SE2d 837) (2000)("Even if the paramedics exercised bad judgment and acted negligently, such does not amount to a lack of good faith.") (citation and punctuation omitted.); *Thomas v. DeKalb County*, 227 Ga. App. 186, 190 (2) (489 SE2d 58) (1997) (same).

13

We find that contrary to Ortega's contention, these allegations were founded upon the rendition of Okefenokee EMS's emergency care and thus constituted an "act or omission" in the "rendering [of] such emergency care" as contemplated by OCGA § 31-11-8. Compare *Crewey v. American Medical Response of Ga.*, 303 Ga. App. 258, 259-264 (692 SE2d 851) (2010) (ambulance company was not entitled to summary judgment after claiming immunity under OCGA § 31-11-8 (a) where a cardiologist ordered that the plaintiff be transferred to another facility because the medical center did not have the resources to treat the plaintiff but the ambulance company delayed in providing the necessary transportation.); *Bricks v. Metro Ambulance Svc.* 177 Ga. App. 62, 69 (2) (338 SE2d 438) (1985) ("The trial court erred under the facts of this case in charging OCGA § 31-11-8, concerning immunity of ambulance services for good faith rendition of emergency care, because liability in this case was not founded upon the rendition of health care but was based upon the intentional torts of assault and robbery.")

Nevertheless, under the statute, immunity attaches only if the emergency services in question were not for remuneration.[5] OCGA § 31-11-8 (c). The trial court found that

> Okefenokee EMS did not receive any remuneration for the services it rendered . . . . Okefenokee EMS did prepare and send a bill for services; no payment was made until . . . after the filing of this motion for summary judgment . . . [and] Okefenokee EMS rejected this payment. . . . [S]ince Okefenokee EMS never accepted payment for the invoiced charges, there was never any remuneration under the statute.

In determining whether there has been remuneration for purposes of immunity under OCGA § 31-11-8 (c), this Court noted that

> [i]t appears to have been the intent of the General Assembly not to vest immunity in those "persons" who were being *rewarded* for the performance of "emergency services." . . . [And] a fee charged by a governmental organization to assist in defraying the administrative costs of transporting a person to a hospital is not the equivalent of receiving remuneration for providing stated "emergency care," within the meaning of OCGA § 31-11-8 (c). What may constitute a remuneration to a private "person" may not reward and constitute remuneration to a governmental

---

[5] "'Remuneration' is the act of remunerating, and the primary definition of to 'remunerate' is 'to pay, recompense, or reward for work, trouble, etc.'" (Citation and punctuation omitted.) *Ramsey v. City of Forest Park*, 204 Ga. App. 98, 101 (2) (d) (418 SE2d 432) (1992).

15

organization having to control its public expenditures carefully while providing "emergency medical services" to those within its boundaries. And, OCGA § 31-11-8 (c) must be liberally construed so as not to thwart the public policy purpose reflected in OCGA § 31-11-1.

(Citations, punctuation and emphasis omitted.) *Martin v. Fulton-Dekalb Hosp. Auth.*, 250 Ga. App. 663, 667 (551 SE2d 415) (2001). In *Martin,* we held that "the payment Medicaid made to Grady constituted 'remuneration' so as to render the immunity of OCGA § 31-11-8 inapplicable." Id. at 668. We further held that "[u]nlike . . . [a] 'transportation charge' . . . the charge here, which Medicaid partially paid, was for 'ambulance services.' And, although the payment did not completely reimburse Grady, it was not simply payment of an 'administrative fee.'" Id.

Thus, contrary to the trial court's reasoning, for purposes of determining whether there has been remuneration for the emergency services, the focus is not on whether payment was received for the services billed, but rather the purpose of the charges. See *Ramsey,* 204 Ga. App. at 100-101 (2) (d) (administrative costs associated with transportation of persons not remuneration within the meaning of OCGA § 31-11-8(c)); *Presley v. City of Blackshear*, 340 Fed. Appx. 567, 570-571 (11th Cir. 2009) (transportation and mileage fees used to defray the county's administrative expenses of providing an ambulance service).

16

Okefenokee's billing invoice reflected charges for mileage and "ALS1 Emergency." ALS1 is the code for "Advanced Life Support Level 1" utilized by Medicare in its definition of ambulance services published in the Centers for Medicare and Medicaid Services Manual System. Although the invoiced mileage is an administrative cost associated with the transportation of Ortega's husband and son, and not remuneration within the meaning of OCGA § 31-11-8 (c), the ALS1 charges relate to remuneration for emergency services and thus "not simply payment of an 'administrative fee'" for purposes of immunity under OCGA § 31-11-8. See *Fulton-Dekalb Hosp. Auth.*, 250 Ga. App. at 668.

Accordingly, the trial court erred in finding that Okefenokee EMS did not receive remuneration for its services for purposes of immunity under OCGA § 31-11-8 (c). Thus, we reverse the trial court's grant of summary judgment to Okefeenokee EMS.

*Judgment affirmed in part, reversed in part. McMillian and Reese, JJ., concur.*