A11A1473. BEURSKEN et al. v. GWINNETT COUNTY et al.
(716 SE2d 540)

ANDREWS, Judge.
Viki Beursken died of a heart attack suffered soon after she refused transport to a hospital by a Gwinnett County ambulance crew. On appeal from the trial court's grant of summary judgment in this wrongful death action to defendants Gwinnett County and the crew members, Mrs. Beursken's survivors and heirs argue that the county and its employees are not entitled to immunity under either OCGA § 31-11-8, which exempts persons rendering emergency care from liability concerning it, or the doctrine of sovereign immunity. We disagree and affirm.

On appeal from a grant of a motion for summary judgment, we review the evidence de novo, viewing it in the light most favorable to the non-movant, to determine whether a genuine issue of fact remains and whether the moving party is entitled to judgment as a matter of law. *Rubin v. Cello Corp.*, 235 Ga. App. 250 (510 SE2d 541) (1998).

So viewed, the record shows that on the evening of April 5, 2008, Jeff Beursken called 911 and told the operator that he thought his wife was having a heart attack. Mr. Beursken said that his wife, who suffered from high blood pressure, was having difficulty breathing, that she was "clammy," had a "heavy chest," and had taken aspirin 20 minutes before. A Gwinnett County Fire and Emergency Services ambulance crew consisting of paramedics Jeremy Austin and Bobby Jones, and assisted by Keri McNaughton, arrived at the Beursken

house 11 minutes after receiving the call.

Mrs. Beursken told the paramedics that chest discomfort, "more pressure than pain" and "went to her shoulder," had awoken her 30 minutes before. Her skin was "cool," "pale," "ashen," and "moist," but she had no vomiting or breathing difficulties. Mr. Beursken testified that the men told his wife that she was not having a heart attack, although the men testified that they told her that she might be having one. When an electrocardiogram printed out a result reading "normal" but "unconfirmed," the medics told Mrs. Beursken that her heart "appeared to be fine" and that she might be suffering from the flu or sleep apnea, but that "there's only one way to find out" and that was "to take a ride to the hospital with us." Based on the paramedics' statements that she was not having a heart attack, however, the couple decided not to go to the hospital. Mrs. Beursken also appeared and felt better by this time. The paramedics then printed out a refusal of transport form, which Mr. and Mrs. Beursken both signed, acknowledging that Mrs. Beursken had "been informed of the risks in refusing medical care and/or transport" and that she "release[d] Gwinnett County, its officers, agents, and employees from any and all liability and/or responsibility for any injury or illness" that might result from her refusal.

The paramedics left the house at 11:29 p.m. Shortly afterward, Mrs. Beursken suffered a second cardiac event, at which time the same crew returned to the house and transported her to a local hospital. She was pronounced dead at 4:40 the following morning.

In April 2008, Gwinnett County charged a "base transportation rate" and a "mileage rate" for any ambulance transport for the purpose of defraying its administrative costs, and not for the purpose of generating income. In accordance with its procedures, Gwinnett County generated a base rate of $700 and a mileage fee of $180 for a total charge of $880 for its transport of Mrs. Beursken after her second cardiac event. No charge was generated for the crew's first visit because Mrs. Beursken was not transported to the hospital at that time.

Gwinnett County's bill for the transport following the second visit to the Beursken home did not issue for some time as the result of errors by the County's billing contractor. A representative of the contractor eventually called Mr. Beursken, however, who sent a check payable to the County for $425, an amount he estimated as appropriate for both visits. Gwinnett County cashed the check, generated a new statement reflecting this payment for a balance of $455, and mailed the statement to the Beurskens' address. The bill was never paid, was later referred to collections, and was charged off in December 2009.

The trial court granted defendants' motion for summary judg-

ment on grounds including that all of them were entitled to immunity under OCGA § 31-11-8.

1. The plaintiffs argue that the defendants are not entitled to immunity under OCGA § 31-11-8. We disagree.

OCGA § 31-11-8 provides in relevant part:

> (a) Any person, *including agents and employees*, who is *licensed to furnish ambulance service* and who *in good faith renders emergency care* to a person who is a victim of an accident or emergency *shall not be liable for any civil damages to such victim* as a result of any act or omission by such person in rendering such emergency care to such victim.
>
> . . .
>
> (c) The immunity provided in this Code section shall apply only to those persons who perform the aforesaid emergency services for *no remuneration*.

(Emphasis supplied.)

In 1987, six years after the adoption of OCGA § 31-11-8 into law, the Supreme Court of Georgia stated the extent and purpose of the statute as follows:

> [The predecessor of OCGA § 31-11-8] was enacted as a part of a comprehensive Act to provide the citizens of this state with efficient, safe and professional ambulance service. [The statute] sets high standards for licensing the providers of ambulance service and provides for enforcement and regulation of those standards through administrative action. *Once licensed, the providers of ambulance service are granted immunity from civil liability . . . , provided, however, [that] emergency care is rendered in "good faith."* The statute is carefully drawn so as to grant immunity to providers of ambulance service only for their acts and omissions "in rendering such emergency care." The legislature saw fit not to extend immunity to the negligence of an ambulance driver resulting from motor vehicle accidents.

(Emphasis supplied.) *Anderson v. Little & Davenport Funeral Home*, 242 Ga. 751, 754-755 (251 SE2d 250) (1978). The *Anderson* court also noted that in providing this form of immunity,

> the General Assembly recognized that insurance for civil liability covered by the exemption would be extremely expensive and difficult to obtain. This problem, combined

> with the virtually unlimited potential civil liability, could be enough to drive many providers of ambulance service out of the business and greatly discourage others from entering. The effect, in many areas of the state, would be to make emergency ambulance service virtually unobtainable. In recognition of this, the legislature chose to grant immunity from civil liability to providers of such emergency services who were licensed under the Act.

Finally, the *Anderson* court implicitly rejected the position laid out in a dissent, which argued that emergency care providers might act in good faith and be liable for gross negligence nonetheless. Id. at 756-757.

As this Court has held, moreover, "among those 'persons' to whom [OCGA § 31-11-8] applies are 'municipalities' and 'counties,' as they are an 'organization of any kind, including any governmental agency other than of the United States.' " *Ramsey v. City of Forest Park*, 204 Ga. App. 98, 99 (2) (c) (418 SE2d 432) (1992), quoting OCGA § 31-11-2 (18); *Johnson v. Gwinnett County*, 215 Ga. App. 79, 80 (449 SE2d 856) (1994) (quoting *Ramsey*).

(a) We need not decide whether Gwinnett County received "remuneration" for its services because it is undisputed that the County never charged Mr. Beursken for the crew's first visit to the house — that is, the occasion when the alleged negligence occurred. Nor is there any dispute that these crew members were employed by the County's state-licensed ambulance service. For both of these reasons, and as a "person" licensed to provide "emergency care," the County is entitled to immunity for the alleged misconduct of its employees in this case. *Ramsey*, 204 Ga. App. at 99 (2) (c).

(b) Even construing this record in the light most favorable to Mr. Beursken, and pretermitting whether the crew members were even grossly negligent in the course of their response to the Beurskens' first call, the record before us provides no evidence to support Mr. Beursken's suggestion that the crew members acted in bad faith in the course of that response. *Thomas v. DeKalb County*, 227 Ga. App. 186, 190-191 (2) (489 SE2d 58) (1997) (affirming grant of summary judgment when, "[e]ven if hindsight might show that some things could have been done differently," the "totality" of paramedics' actions showed that they acted "in good faith with the intent to save [plaintiff's] life").

The trial court did not err when it granted summary judgment to all defendants on the ground that they were entitled to immunity under OCGA § 31-11-8.

2. Our disposition of Division 1 moots plaintiffs' remaining assertion of error concerning sovereign immunity.

*Judgment affirmed. Phipps, P. J., and McFadden, J., concur.*

DECIDED AUGUST 23, 2011 — 

*Conley Griggs, Richard A. Griggs, Mahaffey, Pickens & Tucker, Gerald Davidson, Jr.*, for appellants.
*Williams, Morris & Waymire, Terry E. Williams*, for appellees.