**THIRD DIVISION**
**MILLER, P. J.,**
**RAY and BRANCH, JJ.**

NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

**November 28, 2012**

# In the Court of Appeals of Georgia

A12A1643. ANDERSON v. TATTNALL COUNTY, GEORGIA.

MILLER, Presiding Judge.

Lois Anderson filed the instant personal injury lawsuit against Tattnall County to recover for injuries that she allegedly sustained when the county-operated ambulance was involved in a collision while transporting her to a local hospital.[1] Tattnall County filed a motion for summary judgment, claiming that it was entitled to statutory immunity as an emergency care provider under OCGA § 31-11-8.[2] The

---

[1] Anderson also sued the driver of the vehicle that allegedly caused the collision with the ambulance. Anderson and the driver later reached a settlement, and the driver was voluntarily dismissed from the suit.

[2] Tattnall County's motion also argued that it was entitled to summary judgment since the negligence of the driver who caused the collision was the sole proximate cause of Anderson's injuries. Anderson argues that a question of fact existed as to the proximate causation issue. In light of our affirmance of the trial court's decision that Tattnall County is entitled to statutory immunity, we need not

trial court granted Tattnall County's motion, from which Anderson appeals. Anderson contends that her transport in the county's ambulance did not involve emergency care, and thus, the trial court erred in applying statutory immunity in this case. We discern no error and affirm.

"On appeal from the grant of summary judgment, we view the record in the light most favorable to the nonmoving party, construing all evidence and inferences to be drawn therefrom in the light most favorable to the nonmoving party. We review issues of law de novo." (Citations and punctuation omitted.) *Crewey v. American Medical Response of Ga.*, 303 Ga. App. 258, 258-259 (692 SE2d 851) (2010).

So viewed, the evidence shows that on the evening of January 16, 2010, Anderson was traveling on a roadway in Tattnall County when her vehicle collided with a tree that had fallen across the road. After hitting the tree, Anderson lost control of her vehicle, and the vehicle descended into a ditch beneath the roadway.

Following the accident, Anderson called her son and a friend for assistance. When Anderson's friend arrived at the scene, Anderson ran to the roadway to meet her. Anderson's son and daughter-in-law also came to the scene. At that time, Anderson told them that she "was shook up" but was not physically injured.

address this alternative ground.

2

Anderson, however, complained that she had a headache and back pain, symptoms that arose after the accident while she was still at the scene.

A call to 911 was placed to report the accident. The Tattnall County emergency medical technicians ("EMTs") received the 911 dispatch call and responded to the scene in an ambulance. When the EMTs arrived, Anderson was sitting inside her vehicle in the ditch. Anderson advised the EMTs that she was experiencing head and back pain. Although Anderson otherwise claimed to be "okay," she testified that "everybody [wanted her] to go to the hospital and make sure that [she] [got] checked out." Anderson agreed to be transported to the hospital by the ambulance.

The EMTs stated that Anderson's complaints of head and back pain raised a possibility of spinal trauma, and therefore, they followed protocol by immobilizing her using head blocks, a cervical collar, and a spinal board to prevent the risk of movement that would aggravate the injury. After the EMTs extricated Anderson from her vehicle and strapped her onto the spinal board in accordance with the immobilization procedure, they carried Anderson from the ditch to the ambulance. The EMTs then moved Anderson onto a stretcher and placed her in the ambulance for transport to the hospital.

During the transport, it was raining and the streets were wet. The ambulance traveled at a speed of approximately 45 miles per hour. The ambulance driver testified that it was an emergency situation, but lights and sirens were not needed during the transport. The EMTs elected not to activate their sirens and strobe lights since using the strobe lights in rain conditions decreased the ambulance driver's visibility. Anderson appeared to be stable, but continued to complain of head and back pain.

While en route to the hospital's emergency room, the ambulance was involved in a collision with a vehicle driven by a third party, who had failed to yield to the right-of-way and drove into the ambulance's path. During the collision, Anderson slid forward off of the stretcher and hit her head, which caused her to sustain a large laceration to her scalp. The ambulance came to rest in a ditch.

Another ambulance transported Anderson from the second accident scene to the hospital. Upon examination at the hospital, Anderson was diagnosed as having a laceration on her head, fractured ribs, fractured vertebra, and a collapsed lung.

Anderson sued Tattnall County, alleging that its EMTs had been negligent while transporting her in the ambulance. Tattnall County denied the negligence claims, and asserted that it was afforded immunity under OCGA § 31-11-8. We agree that statutory immunity applies in this case.

4

OCGA § 31-11-8 states, in relevant part, as follows:

(a) Any person, including agents and employees, who is licensed to furnish ambulance service and who in good faith renders *emergency care* to a person who is a victim of an accident or emergency shall not be liable for any civil damages to such victim as a result of any act or omission by such person in rendering such emergency care to such victim.

. . .

(c) The immunity provided in this Code section shall apply only to those persons who perform the aforesaid emergency services for no remuneration.

(Emphasis supplied.) In explaining the purpose of this statutory immunity, the Supreme Court of Georgia recognized that OCGA § 31-11-8

was enacted as a part of a comprehensive Act to provide the citizens of this state with efficient, safe and professional ambulance service.

. . .

In providing the immunity found in [the statute] it appears that the General Assembly recognized that insurance for civil liability covered by the exemption would be extremely expensive and difficult to obtain. This problem, combined with the virtually unlimited potential civil liability, could be enough to drive many providers of ambulance service

5

out of the business and greatly discourage others from entering. The effect, in many areas of the state, would be to make emergency ambulance service virtually unobtainable. In recognition of this, the legislature chose to grant immunity from civil liability to providers of such emergency services who were licensed under the Act.

(Punctuation omitted.) *Anderson v. Little & Davenport Funeral Home*, 242 Ga. 751, 754-755 (2) (251 SE2d 250) (1978). "The statute is carefully drawn so as to grant immunity to providers of ambulance service only for their acts and omissions in rendering such emergency care." (Punctuation omitted.) Id. at 754 (2).

In this case, Anderson asserts that the only issue for determination is whether the EMTs were providing "emergency care" as contemplated by OCGA § 31-11-8 (a). She otherwise concedes that the remaining prerequisites for immunity under the statute were met since the EMTs were properly licensed, acted in good faith, and did not receive remuneration for their services.

In construing this immunity statute, the Supreme Court of Georgia has defined "emergency care" to mean "the performance of necessary personal services during an unforeseen circumstance that calls for immediate action." *Anderson*, supra, 242 Ga. at 753 (1). In this case, the undisputed evidence established that the EMTs were providing emergency care to Anderson during their response to her accident and their

6

ensuing transport. The evidence showed that the EMTs responded to a 911 call reporting Anderson's accident. When the EMTs arrived at the accident scene, Anderson's vehicle was in a ditch; Anderson was sitting inside of her vehicle and was complaining of a headache and back pain. In light of Anderson's complaints, the EMTs extricated her from her vehicle by immobilizing her and placing her on a spinal board. At that time, Anderson did not walk up the hill to the ambulance on her own volition; rather, the EMTs secured her and carried her on the spinal board from the ditch to the ambulance. Although Anderson's friend and son were at the accident scene and could have transported her to the hospital for examination, Anderson agreed to be transported by ambulance with the EMTs, who continued to monitor her condition throughout the transport.

Anderson nevertheless points to evidence that her vital signs were stable during transport, and argues that immediate care was not necessary. Significantly, however, the definition of "emergency care" set forth in *Anderson* "does not require that the victim be in a critical or life-threatening condition." (Citation and punctuation omitted.) *Willingham v. Hudson*, 274 Ga. App. 200, 204 (1) (a) (617 SE2d 192)

7

(2005).[3] Considering Anderson's complaints of head and back pain following her accident, the EMTs could not exclude the possibility that Anderson had internal injuries or fractures. The undisputed evidence showed that the EMTs did not have access to an x-ray machine at the scene and could not accurately exclude the possibility that Anderson had internal injuries or fractures that required immediate care. As such, the EMTs testified that they treated Anderson's symptoms as presenting an emergency situation by immobilizing her and consistently monitoring her during their transport toward the hospital, where she could receive a proper

---

[3] Anderson's suggestion that "emergency care" under OCGA § 31-11-8 (a) can be defined similarly to "emergency medical care" under OCGA § 51-1-29.5 (a) (5) is unavailing. Contrary to Anderson's argument, the definition of "emergency care" under OCGA § 31-11-8 (a) is controlled by *Anderson*, supra, 242 Ga. at 753 (1), which did not set forth the definition of "emergency medical care" under OCGA § 51-1-29.5 (a) (5). If the Legislature had intended for the same definition and standard to apply in both statutes, it could have done so by amending OCGA § 31-11-8 to incorporate that definition. See, e.g., *Lamad Ministries, Inc. v. Dougherty County Bd. of Tax Assessors*, 268 Ga. App. 798, 803-804 (2) (2004) (ruling that when a Georgia statute specifically adopts and incorporates by reference another statute, the regulations that interpret such statute are also incorporated).The Legislature, however, did not do so. As highlighted by the facts of this case, an EMT in an ambulance does not have the same access to tests and equipment as those typically found in a hospital, and thus, the distinction to be drawn in defining the circumstances presented is understandable.

diagnosis and treatment.[4] Anderson's current opinion that no emergency existed is based upon hindsight and fails to provide evidence as to whether the EMTs were necessarily providing emergency care at the time of the incident. As aptly stated by Tattnall County,

> Ms. Anderson's subjective belief, guided by 20/20 hindsight, that her condition did not require immediate attention is irrelevant. Simply put, because the [p]aramedic and EMT had no information to cause them to reach a contrary determination, they had no option but to conclude that this was an emergency for which immediate action was necessary. To do otherwise would have risked Ms. Anderson's health and would have subjected the County to possible suit for not acting in an emergency.

(Emphasis omitted.) Cf. *Beursken v. Gwinnett County*, 311 Ga. App. 467, 467-470 (1) (716 SE2d 540) (2011) (reflecting that plaintiff's wife died of a heart attack soon after she refused transport to a hospital by a county ambulance crew, who had advised her that although her heart "appeared to be fine," the only way to confirm her condition was to be transported by ambulance to the hospital; ruling that the county

---

[4] While Anderson now denies that the EMTs were providing emergency care during her transport, Anderson has failed to explain why she agreed to be transported in the ambulance with the EMTs. Tattnall County notes that if immediate action was not necessary, Anderson could have instead been driven to the hospital by her friend and son who were available and present to assist her at the accident scene.

9

was entitled to immunity under OCGA § 31-11-8); *Bixler v. Merritt*, 244 Ga. App. 82, 82-83 (534 SE2d 837) (2000) (reflecting that plaintiff sued the county since the emergency medical technicians failed to take her to the hospital after responding to her 911 call; summary judgment was entered in the county's favor since immunity under OCGA § 31-11-8 applied). The evidence of the circumstances and Anderson's symptoms following her accident established that the EMTs had rendered emergency care during Anderson's transport en route to the hospital. The trial court correctly ruled that OCGA § 31-11-8 was controlling in the case, and that Tattnall County was entitled to statutory immunity thereunder.

*Judgment affirmed. Ray and Branch, JJ., concur.*