**FOURTH DIVISION**
**DILLARD, C. J.,**
**DOYLE, P. J., and MERCIER, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**March 7, 2019**

# In the Court of Appeals of Georgia

A18A1913. LLEWELYN v. BRYANT et al.

MERCIER, Judge.

Six-year-old Zackery Bryant ("Zachery") was tragically struck and killed by a school bus after he exited the bus at the elementary school he attended. His parents, Jason Bryant and Rachel Bryant (the "Bryants"), filed a negligence action against the school's assistant principal, Tracy Llewelyn, individually, alleging that the negligent performance of her duties in overseeing the unloading of the buses contributed to Zachery's death. Llewelyn filed a motion for summary judgment, asserting that she was entitled to official immunity. The trial court denied the motion. We granted Llewelyn's application for interlocutory review. Because Llewelyn was entitled to summary judgment, we reverse.

In reviewing a trial court's ruling on motion for summary judgment, we review the evidence in the light most favorable to the non-moving party to determine whether issues of fact remain or whether the moving party is entitled to judgment as a matter of law. See *Beursken v. Gwinnett County*, 311 Ga. App. 467 (716 SE2d 540) (2011).

So viewed, the evidence shows that Llewelyn was the assistant principal at Chattanooga Valley Elementary School, which is in the Walker County School District. On the morning of April 14, 2014, Llewelyn was in front of the school building, welcoming students as they arrived at school. Llewelyn was not assigned to this task; she made her own schedule and chose to greet students upon their arrival. On that morning, she was facing the school buses, talking to students as they arrived, and telling students to slow down because it was raining and the ground was wet. She radioed a custodian to bring a mop to dry the floor near the cafeteria entrance.

Zackery arrived at the school on a school bus. After exiting the bus, he returned to the bus to retrieve a video game player. He exited the bus again and walked toward the school building. The bus driver began driving away and, hearing someone yell for him to stop, he stopped the bus. Llewelyn heard a disconcerting noise, ran to the bus, and "saw what had happened." She ran to a police officer who was monitoring traffic

on campus, and informed him that a child had been struck by a school bus. The officer found Zachery on the ground, deceased.

The school district's transportation supervisor deposed that the school district had adopted a "Transportation Handbook," which was in effect at the time of the incident. The school transportation handbook was used to train bus drivers. Under the heading "Unloading at School, Driver Cont'd," the handbook stated: "School staff should be on duty to supervise[.]" The transportation supervisor opined that it was the duty of the school staff to "receive the children" as they exited the school buses.

In their negligence action against Llewelyn, the Bryants alleged that Llewelyn had "specific ministerial duties of monitoring, overseeing and assuring the safe unloading of the school buses," that she was negligent in failing to fulfill those duties, and that Zackery's death was a result of her negligence. The Bryants maintained that the transportation handbook established a ministerial duty. In Llewelyn's motion for summary judgment, she asserted that she was entitled to official immunity because her duty to supervise the children, including Zackery, was discretionary rather than ministerial. The trial court denied the motion.

"The doctrine of official immunity, also known as qualified immunity, offers public officers and employees limited protection from suit in their personal

capacit[ies]." *Grammens v. Dollar*, 287 Ga. 618, 619 (697 SE2d 775) (2010). A public employee, such as Llewelyn, may be personally liable for her negligent ministerial acts, but she may not be held liable for her discretionary acts unless such acts are wilful, wanton, or outside the scope of her authority. *Gilbert v. Richardson*, 264 Ga. 744, 752-753 (6) (452 SE2d 476) (1994). (The Bryants have not alleged that Llewelyn's acts were wilful, wanton, or outside the scope of her authority.)

> A ministerial act is commonly one that is simple, absolute, and definite, arising under conditions admitted or proved to exist, and requiring merely the execution of a specific duty. A discretionary act, however, calls for the exercise of personal deliberation and judgment, which in turn entails examining the facts, reaching reasoned conclusions, and acting on them in a way not specifically directed.

*McDowell v. Smith*, 285 Ga. 592, 593 (678 SE2d 922) (2009) (citation omitted). Whether an action is discretionary or ministerial "depends on the character of the specific actions complained of, not the general nature of the job, and is to be made on a case-by-case basis." Id. at 594-595 (citation and punctuation omitted). "The determination of whether the acts or omissions of [Llewelyn] were ministerial or discretionary is a legal question for the court." *Kelly v. Lewis*, 221 Ga. App. 506, 508 (471 SE2d 583) (1996) (citation omitted). Such a determination may be made by the

court on summary judgment. See, e.g., *Butler v. McNeal*, 252 Ga. App. 68, 70 (555 SE2d 525) (2001).

"Where there is an established policy requiring an official to take specified action in a specified situation, the policy creates a ministerial duty on the part of the official to perform the specified task." *Grammens*, 287 Ga. at 620. But in order for a written policy to impose a ministerial duty, "the policy must mandate simple, absolute, and definite action and require the execution of a specific task without any exercise of discretion." Id.

In its order denying summary judgment, the trial court found that the transportation handbook established a ministerial duty that a staff member be "on duty" as children exited the school bus, which duty Llewelyn negligently failed to fulfill. The court further found that this case was analogous to *McDowell v. Smith*, supra. In that case, a school receptionist failed to consult with an administrator or check a student's information card to verify that the person picking up the child was authorized to do so, as required by school policy, and released the child to her non-custodial parent. *McDowell*, 285 Ga. at 592-593. Because the receptionist's "mandated actions were simple, absolute and definite, and required the execution of

specific tasks without any exercise of discretion," the Supreme Court determined that they were ministerial functions. Id. at 593-594.

Even assuming the directive in the transportation handbook applied to Llewelyn, the handbook's requirement that "school staff . . . be on duty to supervise" children as they exit buses is not simple, absolute and definite, and does not require the execution of specific tasks. Nor is a duty to "receive" the children simple or definite. Rather, the directives cited are vague and indefinite, and necessarily require the exercise of discretion, especially in light of the long-standing rule that the "duty to supervise, control and monitor students is a discretionary function." *McDowell*, 285 Ga. at 594; accord *Reece v. Turner*, 284 Ga. App. 282, 285-286 (1) (643 SE2d 814) (2007) ("[D]ecisions concerning the supervision of students and school personnel are considered discretionary, even where specific school policies designed to help control and monitor students have been violated.") (citations and punctuation omitted); *Harper v. Patterson*, 270 Ga.App. 437, 440 (2) (606 SE2d 887) (2004) (noting that "the supervision of student safety is a discretionary function, the proper exercise of which entitles school officials to immunity") (citations and punctuation omitted). Thus, Llewelyn could not be held liable, and the trial court erred by denying her motion for summary judgment. See generally *Reece*, supra at 288 (2) (d); *Gilbert*, supra.

6

*Judgment reversed. Dillard, C. J., and Doyle, P. J., concur.*