A10A1533. BARNARD et al. v. TURNER COUNTY et al.
(701 SE2d 859)

MIKELL, Judge.

Staci Leanna Barnard ("Staci") was killed on September 7, 2006, when she was ejected from her vehicle after it allegedly hydroplaned on Amboy-Rebecca Road ("the Road"). There was evidence that the Road was flooded following a heavy rain. Staci's mother, Cindy Barnard, individually and as administratrix of Staci's estate, brought a wrongful death action against Turner County and Turner County Road Superintendent J. B. Newell, alleging that the defendants negligently failed to maintain the ditches adjacent to the Road, which caused it to flood. The defendants moved for summary judgment, contending that suit against the county was barred by sovereign immunity and that suit against Newell was barred by official immunity. The trial court granted the motion, and Barnard appeals. We affirm as to the county but reverse as to Newell.

> In order to prevail on a motion for summary judgment under OCGA § 9-11-56, the moving party must show that there exists no genuine issue of material fact, and that the undisputed facts, viewed in the light most favorable to the nonmoving party, demand judgment as a matter of law. Moreover, on appeal from the denial or grant of summary judgment the appellate court is to conduct a de novo review of the evidence to determine whether there exists a genuine

---

[7] *Parks v. State*, 239 Ga. App. 333, 334-335 (521 SE2d 370) (1999).

issue of material fact, and whether the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law.[1]

So viewed, the record shows that at the site of the accident, there are ditches on both sides of the Road that are within the county's right-of-way, and the county road department is required to maintain the ditches to provide a path for water to drain. However, the ditches were not functioning properly on the date of the accident. They were filled with dirt that had washed down from an elevated field located adjacent to the Road. There is evidence that the ditches had not been cleaned out for several years prior to the accident.

James Williford testified by affidavit that he leased farmland adjacent to the accident site; that several years earlier, he had observed water accumulating in the Road; that the ditches on the north side of the Road stayed full of dirt, which caused the water to run across the Road; that he never observed anyone cleaning out the ditches; and that prior to the accident, the ditches were level with the road.

David Goff, whose home is located on the Road, testified by affidavit that prior to the accident, the ditches on the east and west ends of the creek near the accident site were full of dirt, so that when it rained, water flowed across the Road; that he complained to a county commissioner on at least two occasions about the conditions of the ditches and suggested that they be cleaned out; and that the ditches were not cleaned out until after the accident.

In his deposition, Newell testified that he has been working for the road department since 1980 and became superintendent on July 6, 2004. Newell also testified that he establishes the policies and procedures applicable to county road maintenance; that the department has no specific policy or pattern of checking any particular road on any given day; and that his standing order to his employees is either to fix any problem that they see or to report it to Newell so that he can decide how to fix it. Newell testified that prior to the fatal accident at issue, he never received a report of a problem with the ditches adjacent to the Road. According to Newell, the roads are designed to have a five-foot shoulder with a six percent slope in order to keep water away from the road; that each ditch is one or two feet deep; and that the department has a duty to dig out the ditches and make sure the roads are draining properly. Newell testified that every road is ridden by a road department employee, on average, once every two to three weeks; that an employee should have ridden

---

[1] (Citation omitted.) *Kennedy v. Mathis*, 297 Ga. App. 295, 296 (676 SE2d 746) (2009).

the Road during that time to determine if there was a problem with the shoulder; and that the department's policy is to document any citizen complaint about a road, to investigate the complaint, and to fix the problem. Newell also testified that he went out to the scene of the fatal accident as soon as he heard about it on the county radio. According to Newell, he observed no water on the road or in the ditches.

Joseph Gardner, Jr., Newell's second in command at the time of the accident, testified that about an hour beforehand, he had driven on the Road and had observed a minimum of two-and-a-half to four inches of water pouring across it in several locations. After he hit the third such location, Gardner called Newell and reported the problem. According to Gardner, he told Newell "that there was water coming over the road in several locations and the shoulders needed to be clipped out or the ditches needed to be dug, something had to be done." Newell responded, "right now, we're not going to be able to do anything as far as getting equipment out there . . . to try to clip the shoulders in the rain." Gardner agreed that trying to do remedial work in the rain would create a greater hazard. But Gardner testified that reporting the drainage problem and fixing it was required by departmental policy. Gardner also testified that workers could have erected a sign stating "water over road," and that doing so was Newell's responsibility. According to Gardner, *"That's why I report to him and let him know of any danger."* Gardner could not discern at the time whether the ditches were full. But a day or two later, a crew returned with heavy equipment to clean the dirt out of the ditch and fill in the hole in the field where the dirt was coming from. Newell supervised this operation.

1. Barnard contends that the trial court erred in granting summary judgment to Newell on the basis of official immunity. We agree.

A suit against a public official acting in his official capacity will be barred by official immunity unless the official negligently performed a ministerial duty or acted with actual malice or an actual intent to cause injury while performing a discretionary duty.[2] Barnard's complaint does not allege that Newell acted with malice or intended to cause injury.[3] Therefore, we must determine whether there is evidence that he breached a ministerial duty.

---

[2] *Lincoln County v. Edmond*, 231 Ga. App. 871, 875 (2) (501 SE2d 38) (1998).

[3] Barnard does seek punitive damages, alleging that the defendants gave false statements and committed acts that were wilful, intentional, fraudulent, and reckless. These allegations are insufficient to state a claim that Newell acted with actual malice as that term is used in our state Constitution. See Ga. Const. 1983, Art. I, Sec. II, Par. IX (d), as amended in 1990. " 'Actual malice,' as that term is used in the constitutional provision, denotes 'express malice,' i.e., 'a deliberate intention to do wrong,' and does not include 'implied malice,' i.e., the reckless disregard for the rights or safety of others." *Murphy v. Bajjani*, 282 Ga. 197, 203 (4) (647 SE2d

A ministerial act is one that is simple, absolute, and definite, arising under conditions admitted or proved to exist, and requiring merely the execution of a specific duty. A discretionary act calls for the exercise of personal deliberation and judgment, which in turn entails examining the facts, reaching reasoned conclusions, and acting on them in a way not specifically directed. Procedures or instructions adequate to cause an act to become merely ministerial must be so clear, definite and certain as merely to require the execution of a relatively simple, specific duty.[4]

"Whether the acts upon which liability is predicated are ministerial or discretionary is determined by the facts of the particular case,"[5] and it "depends on the character of the specific actions complained of, not the general nature of the job."[6] "Where there is an established policy requiring an official to take specified action in a specified situation, the policy creates a ministerial duty on the part of the official to perform the specified task."[7]

Newell concedes that a ministerial duty to inspect, maintain or repair a road arises where there is actual knowledge of a defect in or on the road.[8] In this regard, Newell concedes that he had actual knowledge of water pouring across the Road one hour before Staci's fatal accident. Gardner testified that reporting the drainage problem and fixing it was required by departmental policy. We conclude, therefore, that Newell's knowledge of the hazardous condition on the Road gave rise to a ministerial duty to take remedial action. The trial court erred in ruling that Newell was entitled to official immunity because the evidence showed that he had only an hour's notice of the condition and the ditch could not have been cleaned out while it was raining. "The execution of a specific task is characterized as minis-

---

54) (2007), citing *Merrow v. Hawkins*, 266 Ga. 390, 392 (2) (467 SE2d 336) (1996). "A 'deliberate intention to do wrong' such as to constitute the actual malice necessary to overcome official immunity must be the intent to cause the harm suffered by the plaintiffs." *Murphy*, supra. As Barnard does not allege that Newell intended to cause Staci's fatal accident, she has not stated a claim for actual malice.

    [4] (Citations and punctuation omitted.) *Kennedy*, supra at 297 (1).

    [5] (Citation omitted.) *Woodard v. Laurens County*, 265 Ga. 404, 407 (2) (456 SE2d 581) (1995).

    [6] (Citation and punctuation omitted.) *Kennedy*, supra at 298 (1).

    [7] (Citations omitted.) *Grammens v. Dollar*, 287 Ga. 618 (697 SE2d 775) (2010).

    [8] See *Nelson v. Spalding County*, 249 Ga. 334, 336 (2) (a) (290 SE2d 915) (1982) (county employee's duty to replace and repair stop sign after being notified that sign was down was ministerial); *Lincoln County*, supra (county road superintendent had ministerial duty to remove tree blocking county road or to provide warnings after being notified that tree was obstructing road).

terial even though the manner in which it is accomplished is left to the employee's discretion."[9] Newell had discretion in the manner in which he took remedial action, but the notice he received of the dangerous condition on the Road triggered a ministerial duty to act. Whether he breached such a duty is an issue for a jury to decide.

We note, in addition, that such ministerial duty was not limited to cleaning out the ditch. The complaint alleges that Newell negligently failed to implement adequate warning mechanisms, among other things. A jury would be authorized to conclude from Gardner's testimony that Newell breached a ministerial duty to erect a sign warning of water on the Road.

We find the circumstances in this case analogous to the ones present in *Lincoln County v. Edmond*.[10] In that case, county policy required the road superintendent to remove trees obstructing county roads or to provide warnings of the danger.[11] There was evidence that, for approximately two hours after being notified that a tree had fallen across a county road in a heavy rainstorm, the superintendent failed to take action to remove the tree or to warn the motoring public of the hazardous condition.[12] We held that the superintendent's duties were ministerial, even though he retained discretion in the manner by which he accomplished them, and that he could be held liable for breaching those duties.[13] The same is true in the case at bar. Newell can be held liable for negligently performing his ministerial duties.[14] Questions of whether he had sufficient *time* to take remedial action or to warn of the hazardous condition are matters for a jury to decide.[15]

Cases cited by Newell are distinguishable because they do not involve a county employee or official's receipt of actual notice of a hazardous condition to which he failed to respond.[16] As such, we hold

---

[9] (Citations and punctuation omitted.) *Lincoln County*, supra.

[10] Supra.

[11] Id.

[12] Id.

[13] Id.

[14] See id. Accord *Nelson*, supra at 336-337 (2) (a).

[15] See *Nelson*, supra at 337 (2) (a); *Lincoln County*, supra.

[16] *Kennedy*, supra at 298 (1) (act of cutting back vegetation along the county right-of-way was discretionary as there was no written policy concerning the procedure or manner in which to accomplish it); *Banks v. Happoldt*, 271 Ga. App. 146, 151 (2) (608 SE2d 741) (2004) (road superintendent's duty to repair road was discretionary in the absence of any mandated county policy directing his actions); *Stone v. Taylor*, 233 Ga. App. 886, 889 (2) (506 SE2d 161) (1998) (whether to level road shoulders required exercise of discretion because county had no policy or procedures in place); *Coffey v. Brooks County*, 231 Ga. App. 886, 890 (2) (c) (500 SE2d 341) (1998) (road superintendent's decision not to barricade flooded road was a discretionary act; record contained no evidence that superintendent was aware of the actual road conditions before the accidents occurred), rev'd on other grounds, *Rowe v. Coffey*, 270 Ga. 715 (515 SE2d 375) (1999).

that Barnard's claim against Newell is not barred by official immunity.

2. Barnard argues that the trial court erred in granting summary judgment to the county on the basis of sovereign immunity. She apparently concedes that the county has not waived its sovereign immunity.[17] Barnard asserts, however, that the application of this constitutional doctrine violates her rights to due process and equal protection of the laws. Our Supreme Court rejected the same argument in *Woodard v. Laurens County*,[18] holding: "The bar of sovereign immunity neither results in a deprivation of property without just compensation nor constitutes a denial of equal protection or due process under the federal or state constitutions."[19] It follows that the trial court correctly ruled that sovereign immunity barred Barnard's claim against the county.

*Judgment affirmed in part and reversed in part. Smith, P. J., and Adams, J., concur.*

DECIDED SEPTEMBER 28, 2010.

*Spurlin & McCorvey, John C. Spurlin*, for appellants.
*O'Quinn & Cronin, Michael A. O'Quinn, Westmoreland, Patterson, Moseley & Hinson, William C. Heard*, for appellees.

---

[17] See Ga. Const. 1983, Art. I, Sec. II, Par. IX (e) ("The sovereign immunity of the state and its departments and agencies can only be waived by an Act of the General Assembly which specifically provides that sovereign immunity is thereby waived and the extent of such waiver."); *Gilbert v. Richardson*, 264 Ga. 744, 746-747 (2) (452 SE2d 476) (1994) (sovereign immunity extends to counties under the 1991 amendment to the Georgia Constitution).

[18] Supra.

[19] Id. at 406 (1).