HUNSTEIN, Justice.
This matter arises out of a wrongful death suit filed by Tammy Pearce (“Appellant”), individually and as administrator of the estate of her husband, Christopher Pearce (“Pearce”), against Glynn County Police Officer Henry Tucker after Pearce committed suicide while in custody. The trial court denied Officer Tucker’s motion for summary judgment; the Court of Appeals reversed the judgment of the trial court, concluding that there was insufficient evidence that any negligent act by Officer Tucker proximately caused Pearce’s death, and this Court subsequently granted certiorari to review that decision. We now hold as a threshold matter that Officer Tucker is entitled to qualified immunity, and we therefore need not address the merits of Appellant’s negligence claim. Accordingly, we affirm the judgment of the Court of Appeals under our right-for-any-reason rule.
On the day of his suicide, Pearce — who suffered from major depressive disorder — arrived unexpectedly at his pastor’s house carrying a pistol in his hand; the pastor and his wife summoned help while Pearce remained outside. Officers Henry Tucker and William Tomlinson, Jr., arrived at the residence and observed Pearce with a gun tucked in his waistband. Pearce, a convicted felon, was subsequently handcuffed, relieved of the firearm, and placed in a patrol car. Officer Tucker transported Pearce to the Glynn County Police Department headquarters. Once at the headquarters, Pearce was placed in a holding cell with a monitored video feed. Pursuant to police department policy, Officer Tucker had Pearce remove his shoes, belt, tie, and the contents of his pockets. Approximately 15-20 minutes after being placed in the holding cell, Pearce ended his life by hanging himself with his socks.
It is undisputed that Officer Tucker failed to comply with Glynn County Police Department Policy 22.16.3 (E) before placing Pearce in the holding cell.[1] That policy states as follows:
Officers detaining a person must complete a screening form on the person before they are placed in the temporary holding cell and before they are transferred to another agency. The purpose of the screening is to determine whether medical attention is required of the person to be detained.
*225 The officer must fill out the screening form noting and inquiring as to:
1. The current health of the detainee
2. Medications taken by the detainee
3. Behavior, including state of consciousness and mental status, and
4. Body deformities, trauma markings, bruises, lesions, ease of movement, etc.
Blank forms will be kept in the fingerprinting room. Completed forms will be submitted to the on-duty supervisor who will review and then forward them to the Patrol Division Commander who will review and file the forms in the Records Section to be kept for a period of two years.
The “screening form” referenced in the department policy is styled “Holding Cell Medical Information,” and, pursuant to the policy, it provides spaces for an officer to record details regarding a detainee’s “health condition,” medications, behavior, and “body (cuts, bruises, etc.).”
In her complaint, Appellant alleged, inter alia, that Officer Tucker negligently failed to have Pearce remove his socks before placing him in the holding cell.[2] Officer Tucker subsequently moved for summary judgment, arguing that he was entitled to immunity with respect to his failure to have Pearce remove his socks. He also asserted that any possible negligence claim arising out of his failure to complete the medical form — if not barred by immunity — would be unavailing owing to the fact that the incomplete medical form did not proximately cause Pearce’s suicide. In response to Officer Tucker’s motion for summary judgment, Appellant’s theory of negligence shifted. While acknowledging that Officer Tucker was entitled to qualified immunity — and, thus, summary judgment — with respect to her original claim, Appellant asserted that a claim related to Officer Tucker’s failure to “screen” Pearce remained viable. Appellant *226 contended that Officer Tucker was not entitled to immunity with respect to the screening claim and that there existed a question of fact as to whether Officer Tucker could have prevented Pearce’s suicide by having completed the “medical screening.” In a brief opposing summary judgment, Appellant clarified her position, specifying that she was not claiming that “a properly completed [screening] form would have prevented Pearce’s death,” but, instead, that a “medical screening” would have revealed Pearce’s suicidal intentions and that the screening form was “merely a record of the screening.” The trial court agreed, concluding that Officer Tucker was not entitled to immunity with respect to the screening claim and that a genuine issue of material fact existed with respect to whether Pearce’s suicide could have been prevented had Officer Tucker completed “a proper medical screening.” Officer Tucker appealed.
The Court of Appeals, without resolving the issue of immunity, addressed the substance of Appellant’s claim and reversed the trial court. After recognizing the general rule regarding suicide — that it is an unforeseeable intervening cause of death which absolves the tortfeasor of liability except where the tortfeasor’s wrongful act causes the injured party to kill himself during a rage or frenzy, or in response to an uncontrollable impulse[3] — the Court of Appeals concluded that there was no evidence that Pearce was in a rage or frenzy or had an uncontrollable impulse when he took his life and, thus, that Pearce’s final act was an unforeseeable intervening cause of death which absolved Officer Tucker of liability Tucker v. Pearce, 332 Ga.App. 187 (771 SE2d 495) (2015). This Court granted certiorari to address two questions: first, whether the general rule regarding suicide — on which the Court of Appeals’ decision rests — applies in prisoner suicide cases, as was held in this case and in Harvey, even though other decisions of that court hold that the general rule does not apply where there is a special relationship between the decedent and the defendant, see Brandvain v. Ridgeview Institute, Inc., 188 Ga. App. 106, 112-118 (372 SE2d 265) (1988), and that such a special relationship exists between an officer and his prisoner, see Thomas v. Williams, 105 Ga. App. 321, 326 (124 SE2d 409) (1962); and second, whether the Court of Appeals otherwise correctly reversed the trial court’s denial of summary judgment with respect to the medical-form claim. We conclude that Officer Tucker is entitled to qualified immunity with respect to the screening claim and, for this reason, that the Court of Appeals properly reversed the denial of summary judgment; we therefore need not address the first question, and we leave it to *227 future cases for this Court or the Court of Appeals to reconcile the tension in the appellate case law that we have identified.
The issue of Officer Tucker’s immunity is a question of law and is reviewed de novo. See Cameron v. Lang, 274 Ga. 122 (1) (549 SE2d 341) (2001).
Qualified immunity, also known as official immunity, “ ‘protects individual public agents from personal liability for discretionary actions taken within the scope of their official authority, and done without wilfulness, malice, or corruption.’ ” (Citations omitted; emphasis supplied.) Cameron, 274 Ga. at 123. On the other hand, “a public officer or employee may be personally liable . . . for ministerial acts negligently performed or acts performed with malice or an intent to injure.” (Emphasis supplied.) Id. Because there is no evidence that Officer Tucker “acted or failed to act with malice, wilfulness, or an intent to injure,” the question before us is whether Officer Tucker’s nonobservance of Department Policy 22.16.3 (E) was a failure to perform a ministerial or discretionary act. Grammens v. Dollar, 287 Ga. 618, 620 (697 SE2d 775) (2010).
A ministerial act is commonly one that is simple, absolute, and definite, arising under conditions admitted or proved to exist, and requiring merely the execution of a specific duty. A discretionary act, however, calls for the exercise of personal deliberation and judgment, which in turn entails examining the facts, reaching reasoned conclusions, and acting on them in a way not specifically directed.
(Citations omitted). Murphy v. Bajjani, 282 Ga. 197, 199 (1) (647 SE2d 54) (2007). “ ‘The determination of whether an action is discretionary or ministerial depends on the character of the specific actions complained of, not the general nature of the job, and is to be made on a case-by-case basis.’ ” (Citations and punctuation omitted.) McDowell v. Smith, 285 Ga. 592, 594-595 (678 SE2d 922) (2009). “The single overriding factor is whether the specific act from which liability allegedly arises is discretionary or ministerial.” (Emphasis supplied.) Golden v. Vickery, 285 Ga. App. 216, 218 (645 SE2d 695) (2007).
Policy 22.16.3 (E) required Officer Tucker to complete a screening form; arguably, compliance with the policy and completion of the screening form was ministerial in nature. See, e.g., Meagher v. Quick, 264 Ga. App. 639 (1) (594 SE2d 182) (2003) (responsibility of officers to complete a Family Violence Reportas requiredbyOCGA § 17-4-20.1 was ministerial duty). Here, however, is where Appellant’s shifting theory of negligence muddles our analysis. While Appellant relies on the definite nature of the screening-form policy to argue that Officer *228 Tucker neglected a ministerial duty — and, thus, is not entitled to immunity —Appellant affirmatively stated in the trial court that she was not alleging that a properly completed form would have prevented Pearce’s death. Instead, the gravamen of Appellant’s negligence claim is that Officer Tucker failed to complete a “medical screening” — not the form itself— which, Appellant says, would have revealed Pearce’s suicidal ideation; according to Appellant, the screening form is merely evidence of a more in-depth, though undefined, medical screening mandated by Policy 22.16.3 (E).[4]
“[A]n established policy requiring an official to take specified action in a specified situation... creates a ministerial duty on the part of the official to perform the specified task” but only where that “policy . . . mandate[s] simple, absolute, and definite action and require[s] the execution of a specific task without any exercise of discretion.” See Grammens, 287 Ga. at 620. See also Davis v. Effingham County Bd. of Commrs., 328 Ga.App. 579 (2) (760 SE2d 9) (2014) (recognizing that the existence of a written policy does not automatically create a ministerial duty). While Policy 22.16.3 (E) dictates what health information should be gleaned from a detainee, it provides no guidance on how such a “medical screening” might be conducted. In contrast to the medical form — which Appellant has characterized as “simply a checklist and a record of inquiries” — Officer Tucker could have completed a “medical screening” in any number of ways, including simple observation. Telling, we think, is Appellant’s speculation that, unlike the completion of the screening form, a properly conducted “medical screening” would have revealed Pearce’s suicidal intentions, either through adept interview techniques or as a result of Officer Tucker’s judgment that Pearce was in crisis. See Grammens, 287 Ga. at 620-621 (eye-protection policy required science teacher to exercise discretion in the implementation of the written policy and, thus, did not call for the performance of a ministerial duty). Under the circumstances of this case, the duty as described by Appellant, even if mandated by policy, would be discre *229 tionary in nature; accordingly, Officer Tucker is entitled to qualified immunity and, thus, summary judgment.
Accordingly, the Court of Appeals’ reversal of the trial court’s denial of summary judgment, though based on a different rationale which we do not address, is therefore affirmed. See Precise v. City of Rossville, 261 Ga. 210 (3) (403 SE2d 47) (1991) (“A judgment that is right for any reason will be affirmed.”).

Judgment affirmed.

All the Justices concur, except Thompson, C. J., and Melton, J., who dissent.

 Officer Tucker was ultimately disciplined for his failure to comply with the policy.

 Appellant also named both Glynn County and Officer Tomlinson as defendants. Glynn County moved for summary judgment on the basis that it was entitled to sovereign immunity, and Officer Tomlinson moved for summary judgment on the basis that his actions in no way contributed to Pearce’s death; the trial court granted the unopposed motions. Like Glynn County, an action against Officer Tucker in his official capacity would be barred. See Donaldson v. Dept. of Transp., 262 Ga. 49, 56 (2) (414 SE2d 638) (1992) (“While suits against public employees in their personal capacities involve official immunity, suits against public employees in their official capacities are in reality suits against the state and, therefore, involve sovereign immunity.”). Accordingly, we address Appellant’s claim against Officer Tucker with respect to his individual capacity.

 See Harvey v. Nichols, 260 Ga. App. 187 (2) (581 SE2d 272) (2003).

 According to the dissent, the policy “creates a clear ministerial duty for officers to launch a medical screening that inquires into the health status of a detainee that is separate from an officer’s duty to fill out a screening form.” Dissenting Op., p.229. This conclusion is at odds with the plain language of Policy 22.16.3 (E). Notably, the policy twice states that an officer must “complete” or “fill out [a] medical screening form," identifies where an officer may find a blank copy of the required form, and instructs an officer to return the completed form to the on-duty supervisor. The plain language of the policy makes clear that an officer’s ministerial duty is the completion of the medical form. Though the policy requires an officer to “inquire” as to the health of a detainee, that inquiry is exclusively connected to (and part and parcel of) the completion of the medical form, not some undefined medical screening envisionedby Appellant. As explained above, however, Appellant explicitly abandoned any claim that Pearce’s suicide resulted from Officer Tucker’s failure to complete the screening form.