**THIRD DIVISION**
**ELLINGTON, P. J.,**
**ANDREWS and RICKMAN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**October 31, 2017**

# In the Court of Appeals of Georgia

A17A1324. ROBERTS et al. v. MULKEY et al.

ELLINGTON, Presiding Judge.

Tracey Roberts and her husband were injured when the van she was driving collided with a pile of dirt and then an excavator at a Carroll County Water Authority (CCWA) work site. Roberts, individually and as temporary administrator of her husband's estate,[1] filed this personal injury action in the State Court of Carroll County against CCWA and Henry Junior Mulkey, a CCWA employee, in his individual capacity. The trial court granted summary judgment to Mulkey on the basis of official immunity and CCWA on the basis of sovereign immunity and dismissed Roberts's complaint with prejudice. In an alternate holding, the trial court found that

---

[1] Roberts does not contend that her husband died due to injuries he received during the collision.

even if Mulkey and CCWA were not immune from suit, they were entitled to summary judgment on the merits. On appeal, Roberts contends that the trial court erred (i) in finding that her claims against Mulkey were barred by official immunity, (ii) in dismissing her claims against CCWA on the grounds of sovereign immunity when that issue was not raised in the motion for summary judgment, and (iii) in finding that she was sole proximate cause of the collision and subsequent injuries. For the reasons set forth below, we reverse in part and vacate in part.

Under OCGA § 9-11-56 (c),

[s]ummary judgment is warranted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. We review the grant or denial of a motion for summary judgment de novo, and we view the evidence, and the reasonable inferences drawn therefrom, in a light most favorable to the nonmovant.

(Punctuation and footnotes omitted.) *Assaf v. Cincinnati Ins. Co.*, 327 Ga. App. 475, 475-476 (759 SE2d 557) (2014).

So viewed, the evidence shows that on June 29, 2012, crew leader Mulkey and two other CCWA employees were assigned to fix a water leak in an underground pipe located on the side of Hog Liver Road in Carroll County. At the work site, Mulkey

2

parked an orange mini-excavator, also known as a "track hoe," with one track on and one track off of the rural two-lane road. He then used the track hoe to dig a hole by the side of the road so the other members of the crew could access the leaking pipe, and he also dug a service ditch from the pipe to the water meter. Mulkey placed the excavated dirt onto the road such that vehicles traveling east on Hog Liver Road would first encounter the pile of dirt and then the mini-excavator. The crew took less than an hour to repair the pipe. During the course of filling the hole back up, Mulkey realized that no warning signs or traffic cones had been placed on the road ahead of the dirt pile and track hoe blocking the lane of travel.

While Mulkey and his crew were working, Roberts left her home around noon and began driving her mini-van east on Hog Liver Road. Her husband was in the passenger's seat, and the van's radio was playing. The weather was clear, the road was dry, and Roberts was driving approximately 35 mph. According to Roberts, she saw a "blur." Roberts swerved left, but was unable to avoid the track hoe. Mulkey testified that he saw Roberts's van hit the dirt pile, then the track hoe, after which the van turned over on its side. Roberts and her husband were injured in the collision. Other than Roberts's vehicle, Mulkey could not recall any traffic coming through the work site.

3

1. Roberts contends that the trial court erred in finding that her claims against Mulkey were barred by official immunity. She argues that Mulkey's failure to perform a ministerial act, specifically placing advance warning signs to alert motorists at any CCWA work site, is not shielded by official immunity. "The issue of [Mulkey's] immunity is a question of law and is reviewed de novo." (Citation omitted.) *Pearce v. Tucker*, 299 Ga. 224, 227 (787 SE2d 749) (2016).

Official immunity generally applies "to government officials and employees sued in their individual capacities." (Citation and punctuation omitted.) *Glass v. Gates*, 311 Ga. App. 563, 574 (2) (716 SE2d 611) (2011). Under that doctrine, a public officer or employee "may not be held liable for his discretionary acts unless such acts are wilful, wanton, or outside the scope of his authority." (Citation omitted.) *Gilbert v. Richardson*, 264 Ga. 744, 752 (6) (452 SE2d 476) (1994).[2] However, there is "no immunity for ministerial acts negligently performed or for ministerial or discretionary acts performed with malice or an intent to injure." Id. at 753 (6). Thus, "[a] public officer or employee may be personally liable for ministerial acts negligently performed, or for ministerial acts he or she negligently failed to perform."

[2] "The doctrine of official immunity has now been incorporated into the state constitution. See Ga. Const. of 1983, Art. I, Sec. II, Par. IX." *Austin v. Clark*, 294 Ga. 773, 774 n. 2 (755 SE2d 796) (2014).

4

(Citations omitted.) *Boatright v. Copeland*, 336 Ga. App. 107, 108 (783 SE2d 695) (2016).

It is undisputed that Mulkey did not act with malice or intent to injure when he failed to place warning signs at the Hog Liver Road work site; accordingly, at issue is whether the act of placing warning signs was a ministerial or discretionary act.

> A ministerial act is commonly one that is simple, absolute, and definite, arising under conditions admitted or proved to exist, and requiring merely the execution of a specific duty. A discretionary act, however, calls for the exercise of personal deliberation and judgment, which in turn entails examining the facts, reaching reasoned conclusions, and acting on them in a way not specifically directed.

(Citation and punctuation omitted.) *Common Cause/Georgia v. City of Atlanta*, 279 Ga. 480, 482 (2) (614 SE2d 761) (2005). See *Pearce v. Tucker*, 299 Ga. at 227 (accord). Instructions or procedures sufficient "to cause an act to become merely ministerial must be so clear, definite and certain as merely to require the execution of a relatively simple, specific duty." (Punctuation and footnote omitted.) *Barnard v. Turner County*, 306 Ga. App. 235, 238 (1) (701 SE2d 859) (2010). "A ministerial duty may be established by evidence such as a written policy, an unwritten policy, *a*

*supervisor's specific directive*, or a statute." (Citations omitted; emphasis supplied.) *Roper v. Greenway*, 294 Ga. 112, 114-115 (751 SE2d 351) (2013).

The evidence shows that CCWA did not, at the time of June 29, 2012 collision, have a written traffic control policy. Rather, according to Jared Hopson, a CCWA field superintendent, the crew leaders knew what signs to put out at a work zone from "on-the-job" training. On the day of the collision, no one told Mulkey to put out warning signs.

CCWA and Mulkey contend that, in the absence of any law, policy, or directive requiring to Mulkey to deploy warning signs at the work site on Hog Liver Road, it was within Mulkey's discretion whether to use the signs. Particularly, they contend that the decision to use warning signs or cones required CCWA crew chiefs, like Mulkey, to take measure of the traffic flow and sight lines of potential drivers that might travel through the work zone. However, a trier of fact could conclude that Mulkey's supervisor had specifically directed him to deploy warning signs at all CCWA work sites. Mulkey testified that Hopson had repeatedly told him before the collision that he was supposed to put out warning signs at CCWA work sites. Mulkey also agreed that the crew leader was responsible for making sure that the appropriate signs were out, and he testified in that respect as follows:

6

Q: And as far as putting out the signs, that's something that you know is something you need to do at every work site; correct?

A: Yes, sir.

Q: That you don't need really need to think about it; you just need to get them out there. Correct?

A: Yes, sir.

In his testimony, Hopson agreed that "even with a straightaway [road], low volume [traffic], [Mulkey] needed to have signs out there . . . [a]nd . . . that's the rule he was expected to follow[.]" Thus, even if Mulkey was not given instructions as to how to conduct the work site at Hog Liver Road, in particular, the evidence shows that Mulkey had been instructed by his supervisor to take a specific action (deploy warning signs) in a specific situation (at a CCWA work site), and that the execution of such directive was not a matter of personal judgment or consideration.

The evidence, if viewed in a light most favorable to Roberts, shows that Hopson's instruction to Mulkey to deploy warning signs at CCWA work sites was clear, definite, and certain, and required the execution of a relatively simple, specific duty, such that the deployment of warning signs was a ministerial act. See *Glass v.*

7

*Gates*, 311 Ga. App. at 575-576 (2) (evidence that an unwritten departmental policy required a work detail supervisor to call the work camp and request a service truck when a tractor became stuck showed that the defendant was required to take a specified action in a specified situation and constituted evidence of a ministerial duty); *Joyce v. Arsdale*, 196 Ga. App. 95, 97 (395 SE2d 275) (1990) (road superintendent's actions in barricading a bridge were ministerial where county commission directed him to close the bridge). It follows that the trial court erred in granting summary judgment to Mulkey on the basis of official immunity. See *Glass*, 311 Ga. App. at 575-576 (2) (if relevant facts pertaining to immunity are in dispute, the trial court is without authority to resolve those factual issues on a motion for summary judgment).

2. Roberts further contends that the trial court erred in dismissing her claims on the basis of CCWA's sovereign immunity when the only issue of immunity raised on summary judgment was Mulkey's official immunity. Mulkey and CCWA acknowledge that in their motion for summary judgment Mulkey raised the issue of his official immunity but CCWA did not raise the issue of its sovereign immunity.

In its order, the trial court initially considered whether "the Defendants" had official immunity, which "would bar [Roberts's] action against them."

8

Notwithstanding that the trial court's order may imply that Mulkey's official immunity would bar Roberts's claims against both Mulkey and CCWA, "the official immunity of a public employee does not protect a governmental entity from liability under the doctrine of respondeat superior. A county may be liable for a county employee's negligence in performing an official function to the extent the county has waived sovereign immunity." (Citations omitted.) *Gilbert v. Richardson*, 264 Ga. at 754 (7) (where county sheriff was sued for damages arising from a collision between the plaintiff and a sheriff's employee, the sheriff could not claim the benefit of his employee's official immunity defense; and while the sheriff was entitled to the benefit of the county's sovereign immunity defense because he was sued in his official capacity, the county had waived its sovereign immunity to the extent of its liability insurance coverage). Thus, the trial court erred to the extent that it determined that, because it had found that Mulkey was entitled to official immunity, that finding required the grant of summary judgment to CCWA as well.

The trial court did not discuss in its order whether the evidence showed that CCWA's sovereign immunity had been waived, but found that no issue of waiver was suggested by the pleadings or record, and that, in the absence of waiver, CCWA was entitled to sovereign immunity. After concluding that Mulkey was entitled to official

9

immunity, the trial court then granted summary judgment to both CCWA and Mulkey "on the issues of sovereign and official immunity." To the extent the trial court granted summary judgment to CCWA on the basis of its sovereign immunity, CCWA did not move for summary judgment on this ground and the trial court's ruling on the issue was sua sponte.

> Although a trial court may, sua sponte, grant summary judgment on an issue not raised by the parties, in so doing the trial court must ensure that the party against whom summary judgment is rendered is given full and fair notice and opportunity to respond prior to entry of summary judgment.

(Citation and punctuation omitted.) *Thomas v. Tenet Healthsystem GB, Inc.*, 340 Ga. App. 78, 82 92) (796 SE2d 307) (2017). See *Hodge v. SADA Enterprises, Inc.*, 217 Ga. App. 688, 690 (1) (458 SE2d 876) (1995) (accord). The record does not show that the trial court afforded Roberts with notice and opportunity to respond to the issue of whether CCWA had waived sovereign immunity. We therefore vacate the trial court's order to the extent that it grants summary judgment to CCWA on the basis of sovereign immunity and reverse the dismissal of Roberts's complaint.

3. Lastly, we consider the trial court's ruling that, if not immune to suit, Mulkey and CCWA were entitled to summary judgment on the merits. In that respect,

Roberts contends that the trial court erred in finding, as a matter of law, that she was the sole proximate cause of the collision. Under Georgia law, "[i]f the plaintiff by ordinary care could have avoided the consequences to himself [or herself] caused by the defendant's negligence, [the plaintiff] is not entitled to recover." OCGA § 51-11-7. The trial court concluded that, because there was large orange object in the roadway, Roberts could have avoided the consequences of any negligence attributable to Mulkey or CCWA.

The evidence shows that the track hoe was located on a straightaway, near the top portion of a rise in the road, and that there was a quarter-mile sight distance to the work site for drivers proceeding eastbound. According to Roberts, she was driving when she suddenly saw a "blur" which she swerved to avoid, and which appeared to be "coming up out of the ditch." She offered no explanation for why she did not see the track hoe, only "I just did not see it."

Mulkey and the CCWA posit that the reason Roberts did not see the dirt pile and the track hoe was that she had not maintained a diligent lookout ahead, and that she could and should have seen, and then avoided, the obstruction in the road by the exercise of due care. The evidence does not, however, require a trier of fact to reach that conclusion. The collision occurred on a partially shaded rural road at

11

approximately high noon. According to Sergeant James Warren, the Georgia State Patrol trooper who investigated the collision, there were trees shading the roadway which "would definitely be a vision obscurity" for a driver on Hog Liver Road. In his opinion, "as you're going from shade to sunlight, from shade to sunlight . . . that's changing your vision." Without any signs advising a driver of road work ahead, Warren testified, there was no warning to a driver that "[she] need[s] to start slowing down." Warren maintained that, "in [his] professional opinion, there was a possibility that [Roberts] did not see the [track hoe] until the last minute." Additionally, there was not simply an orange track hoe blocking the road. The track hoe was parked partially on and partially off of the road, and between the track hoe and an eastbound driver, who would have approached the work site from below, was a pile of dirt.

Other than in plain, palpable, and undisputed cases, "questions of negligence [and] proximate cause, including the related issue[] of . . . lack of ordinary care in avoiding the consequences of another's negligence, . . . are for the jury." (Punctuation and footnote omitted.) *McCray v. FedEx Ground Package System*, 291 Ga. App. 317, 322 (1) (661 SE2d 691) (2008). Here, there remain questions of fact as to the visibility of the work site to an eastbound driver, and whether, as a consequence of the alleged negligence in failing to deploy warning signs, Roberts was not apprised

12

of a need to reduce her speed, both of which could have contributed to Roberts having failed to see the obstruction in the road before a collision became unavoidable.

As Mulkey and CCWA point out, this Court has found that a driver who "plough[ed] headlong at an unabated speed into a clearly visible obstruction" was the author of his own misfortune. *Atlanta Gas Light Co. v. Brown*, 94 Ga. App. 351, 356 (94 SE2d 612) (1956). In that case, however, the complaint showed that the decedent drove for 100 feet on accumulated loose dirt on the street which caused the right side of his truck to ride higher than the left, and that the loose dirt caused him to skid into a dirt pile. Id. Under those facts, the driver "was absolutely aware of the presence of the accumulated dirt" and could have avoided the obstruction in the exercise of ordinary prudence. Id. Here, viewing the evidence in a light most favorable to Roberts, she was not actually aware of the dirt pile and excavator until moments before the collision, and she was not put on advance notice by having physically driven over dirt from the work site. Mulkey and CCWA also assert that if conditions were such that Roberts could not see the orange excavator, then it was her duty to stop driving or slow to a safe speed. However, if Roberts's vision was affected by the alternating light and shadow described by Warren, it does not necessarily follow that she chose to drive while blinded or unable to see, and a trier of fact would not be

13

required to conclude that her failure to reduce her speed below 35 mph caused the collision. See *Brown v. Tucker*, 337 Ga. App. 704, 722-732 (9) (788 SE2d 810) (2016) (where driver collided with a tractor trailer parked by the side of the road, and the sun was in her eyes as she was driving, causing her to squint and making it difficult to see the trailer, but she was not blinded the entire time she was on the road, the evidence did not demand the finding that she was the sole proximate cause of the collision). Compare *Brown v. Atlanta Gas Light Co.*, 96 Ga. App. 771, 775-776 (1) (101 SE2d 603) (1957) (construing the pleadings most strongly against the plaintiff, which was then required for purposes of a demurrer, the petition showed that after being blinded by the sun the decedent could not see his way ahead yet made no effort to bring his truck to a stop, and he thereby failed to exercise ordinary care to avoid obstacles that might be on the street).

It is not plain and palpable that Roberts by ordinary care could have avoided the consequences of Mulkey's and CCWA's alleged negligence. See *Pittman v. Staples*, 95 Ga. App. 187, 191 (97 SE2d 630) (1957) (even assuming that driver failed to keep a lookout ahead of his automobile, the driver's negligence did not constitute the sole proximate cause of his collision with the defendant's truck, which had been

14

abandoned in the middle of a busy highway).[3] Accordingly, the trial court erred in finding that Mulkey and CCWA were entitled to summary judgment on the merits.

*Judgment reversed in part and vacated in part. Rickman, J., concurs. Andrews, J., concurs in Divisions 1 and 2 and in the judgment only in Division 3.*

---

[3] See also *Newsome v. LinkAmerica Express, Inc.*, 336 Ga. App. 800, 802-803 (786 SE2d 692) (2016) (where, while temporarily blinded by the sun, a motorist drove into a tractor alleged to be illegally parked on the street, it was an issue for the jury whether the driver was barred from recovery by contributory negligence); *Reed v. Carolina Cas. Ins. Co.*, 327 Ga. App. 130, 136 (762 SE2d 90) (2014) (defendants were not entitled to summary judgment on doctrine of avoidable consequences where the decedents collided with defendants' truck, which was illegally parked in the emergency lane of an interstate entrance ramp at night and in the rain, notwithstanding that decedent driver was driving too fast for conditions with a blood alcohol content of .095.); *Washington v. Kemp*, 97 Ga. App. 235, 239 (102 SE2d 910) (1958) (where first defendant had parked his car on a state highway, and second defendant drove into a line of cars stopped behind the first defendant's car, injuring plaintiff, the first defendant could not assume that second defendant would discover and avoid the first defendant's negligence in blocking the thoroughfare; rather, the question of whether second defendant could have avoided the negligence was for the jury).