**FIRST DIVISION**
**BARNES, P. J.,**
**GOBEIL and MARKLE, JJ.**

**NOTICE: Motions for reconsideration must be**
*physically received* **in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS*
*COURT. ALL FILINGS MUST BE SUBMITTED WITHIN*
*THE TIMES SET BY OUR COURT RULES.*

**August 23, 2021**

# In the Court of Appeals of Georgia

A21A0761. LOWE et al. v. ETHERIDGE, AS NATURAL PARENT
OF NEXT OF KIN CLINTON GIDDENS et al.

GOBEIL, Judge.

Ann Etheridge, as natural parent and next of kin of Clinton Giddens, brought the underlying wrongful death action against Jones County employees John Lowe and Donald Hammock (collectively referred to as the "defendants"), alleging that the defendants' negligence in failing to maintain the roadway where Giddens was killed was the proximate cause of his death. The defendants appeal from the trial court's order denying their motion for summary judgment, asserting that they were entitled to official immunity. For the reasons that follow, we reverse.

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that

there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law[.]" OCGA § 9-11-56 (c).

> When a defendant moves for summary judgment as to an element of the case for which the plaintiff, and not the defendant, will bear the burden of proof at trial[,] the defendant may show that he is entitled to summary judgment either by affirmatively disproving that element of the case or by pointing to an absence of evidence in the record by which the plaintiff might carry the burden to prove that element. And if the defendant does so, the plaintiff cannot rest on [her] pleadings, but rather must point to specific evidence giving rise to a triable issue.

*Beale v. O'Shea*, 319 Ga. App. 1, 2 (735 SE2d 29) (2012) (citation and punctuation omitted). We review the grant of a motion for summary judgment de novo, "view[ing] the evidence, and all reasonable inferences drawn therefrom, in the light most favorable to the nonmovant." *Cowart v. Widener*, 287 Ga. 622, 624 (1) (a) (697 SE2d 779) (2010) (citation and punctuation omitted). The issue of official immunity "is a question of law and is reviewed de novo." See *Roberts v. Mulkey*, 343 Ga. App. 685, 687 (1) (808 SE2d 32) (2017) (citation and punctuation omitted).

Thus viewed in the light most favorable to Etheridge as the nonmovant, the record shows that on the afternoon of November 28, 2016, Giddens was operating his motorcycle on a road in Jones County when a pine tree located in the right-of-way fell

2

and struck him. Giddens died as a result of the accident. Etheridge then filed a wrongful death action against Lowe, Hammock, and others.

At the time of the accident, Lowe was the director of the Jones County Public Works Department (the "Department"). Hammock was the superintendent of the Department. The Department is tasked with upkeep, maintenance, and inspection of approximately 500 miles of county roadway. The Department has an unwritten policy that employees traveling the county roadways scan the right-of-way and inspect for the presence of visible hazards and report such hazards. However, this policy does not specify how employees are to inspect or assess the trees within and along the county's rights-of-way. According to Hammock, a visible dead tree hanging over the roadway was considered a hazard that any employee was required to report.

Lowe testified via deposition that if there was a tree in the right-of-way that needed removal, he or Hammock would "assess the tree to see whether or not it's something" that his crews could handle. Lowe testified that his crews will not take action with respect to a dead tree "if it's not causing a hazard," because "dead trees are everywhere" and "all dead trees don't fall just [because] they're dead." Hammock testified that if a tree was identified as needing to "come down," he would take action to address the tree by either having it immediately taken down or placing it on a

3

waiting list to come down based upon his perception of the seriousness of the issue. Prior to the accident, neither Lowe nor Hammock were aware of the subject tree, nor had they received complaints or notifications from anyone regarding the subject tree.

Etheridge's witness, Laura Wilson, witnessed not only the accident that killed Giddens, but she also observed the subject tree prior to the accident. Specifically, Wilson testified that ten days before the accident, she observed the tree leaning over the roadway, approximately "three feet out from that yellow line." Wilson also testified that she observed two men in a Department truck slow and point at the tree that fell and hit Giddens. According to Wilson, one man pointed at the tree and the other made a nodding gesture.

The defendants filed a motion in limine to exclude parts of Wilson's testimony. The trial court granted the motion in part and denied it in part, allowing Wilson to testify only as to her observations, including that two Department employees were in a truck in the vicinity of the dead tree, and any conclusions drawn after explaining her factual basis for such opinions. The court expressly prohibited any testimony that the employees were pointing at the specific tree that ultimately fell and caused Giddens's death or speculation about what the two persons in the vehicle may have been saying to one another.

The defendants also filed a motion for summary judgment asserting official immunity, which the trial court denied. The court found that there was a question of fact as to whether the Department had "sufficient unwritten policies" creating a ministerial duty for the defendants to act upon, and whether they "actually saw the leaning tree." The trial court certified its decisions for immediate review, and, after we granted the defendants' application for interlocutory review, this appeal followed.

1. The defendants argue that the trial court erred by denying their motion for summary judgment because they were entitled to official immunity, as the conduct complained of implicates discretionary, rather than ministerial, functions. Specifically, they contend the trial court erred by finding a fact question on the issue of whether the Department had unwritten policies in place to create a "reporting" duty requiring defendants to act, and failing to identify "simple, absolute, and definite dut[ies]" that the defendants did not perform.

"The doctrine of official immunity, also known as qualified immunity, offers public officers and employees limited protection from suit in their personal capacity." *Grammens v. Dollar*, 287 Ga. 618, 619 (697 SE2d 775) (2010) (citation and punctuation omitted); see also Ga. Const. of 1983, Art. I, Sec. 2, Para. IX, subsection (d). Public employees, such as the defendants, may be personally liable for their

negligent ministerial acts, but they may not be held liable for discretionary acts unless such acts are wilful, wanton, or outside the scope their authority.[1] *Gilbert v. Richardson*, 264 Ga. 744, 752-753 (6) (452 SE2d 476) (1994).

> A ministerial act is commonly one that is simple, absolute, and definite, arising under conditions admitted or proved to exist, and requiring merely the execution of a specific duty. A discretionary act, however, calls for the exercise of personal deliberation and judgment, which in turn entails examining the facts, reaching reasoned conclusions, and acting on them in a way not specifically directed.

*McDowell v. Smith*, 285 Ga. 592, 593 (678 SE2d 922) (2009) (citation and punctuation omitted).

"Whether the acts upon which liability is predicated are ministerial or discretionary is determined by the facts of the particular case, and it depends on the character of the specific actions complained of, not the general nature of the job." *Barnard v. Turner County*, 306 Ga. App. 235, 238 (1) (701 SE2d 859) (2010) (citation and punctuation omitted). "Where there is an established policy requiring an official to take specified action in a specified situation, the policy creates a ministerial duty on the part of the official to perform the specified task." Id. (citation and

---

[1] Etheridge did not allege that the defendants acted willfully or with malice.

6

punctuation omitted). "A ministerial duty may be established by evidence such as a written policy, an unwritten policy, a supervisor's specific directive, or a statute." *Roper v. Greenway*, 294 Ga. 112, 114-115 (751 SE2d 351) (2013) (citations omitted).

Here, Etheridge alleged in the complaint that the defendants had a duty to inspect and ensure that the roadway was free from hazardous conditions. In response to the defendants' motion for summary judgment, Etheridge maintained that the evidence showed that Department policy required employees to report hazards to a supervisor so that action could be taken to remove the hazard. Etheridge characterized this reporting duty as "mandatory," and thus lacking choice or discretion. However, the operative duty involved in this case was the duty to inspect and identify a hazard, and the duty to report and remove arises only upon a hazard being identified. The Department did not have a policy on how trees were to be assessed to determine if they were a hazard, nor what specific actions an employee should take once a tree was deemed hazardous. Thus, the acts of inspection and assessment are discretionary as they require the employees to exercise personal deliberation and judgment. Indeed, this Court has held that "[i]nspecting [public] property for hazards, deciding what constitutes a hazard, selecting appropriate methods for correction, and creating priorities and a schedule for correction, all necessarily involve the exercise of

7

discretion." *Hemak v. Houston County School Dist.*, 220 Ga. App. 110, 113 (469 SE2d 679) (1996). The fact that the Department instructed employees to scan the right-of-way for hazards does not, under the facts present in this case, convert that job function into a ministerial act because *identifying* a hazard requires deliberation and judgment. See *Ortega v. Coffey*, 348 Ga. App. 794, 798 (2) (a) (824 SE2d 690) (2019) (county road supervisor's duty to inspect roadway upon notice of unsafe or dangerous condition was discretionary where there was no policy or directive establishing manner in which supervisor was required to inspect, repair, or maintain roadway; there were no required, scheduled inspections; and county had no written policy, instructions, or directions about how roadways should be maintained or how to respond to issues with roadways); *Kordares v. Gwinnett County*, 220 Ga. App. 848, 848-849 (470 SE2d 479) (1996) (because county employees generally inspected bridges once or twice a year, but no policy or procedure dictating the method of inspection, the inspection was a discretionary function); *Coffey v. Brooks County*, 231 Ga. App. 886, 889 (2) (b) (500 SE2d 341) (1998) (where there was no established procedure or instruction which the individual road supervisors and employees failed to follow during their inspections of the roadways, therefore, the acts relating to the manner of inspection and the action to be taken regarding the results obtained during

8

the inspection, upon which any liability is premised, were discretionary), reversed in part on other grounds, *Rowe v. Coffey*, 270 Ga. 715, 716 (515 SE2d 375) (1999). Consequently, the trial court erred by finding a genuine issue of material fact as to the existence of a ministerial duty on the part of the defendants in this case, and we reverse the court's denial of the defendants' motion for summary judgment based on official immunity.

2. Based on our holding in Division 1, we need not address the defendants' remaining claims of error.

*Judgment reversed. Barnes, P. J., and Markle, J., concur.*