[DO NOT PUBLISH]

# In the
# United States Court of Appeals
## For the Eleventh Circuit

_____

No. 25-10261

Non-Argument Calendar

_____

JALEN BASS,

Plaintiff-Appellant,

*versus*

ROLAND JONES, JR.,
In his individual capacity,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 1:23-cv-04031-TWT

2                      Opinion of the Court                    25-10261

_____

Before WILLIAM PRYOR, Chief Judge, and JILL PRYOR and BRASHER, Circuit Judges.

PER CURIAM:

Jalen Bass appeals the summary judgment in favor of Officer Ronald Jones Jr. and against his complaint alleging claims of excessive force in violation of the Fourth Amendment, 42 U.S.C. § 1983, and state law assault and battery, Ga. Code Ann. §§ 51-1-13, 51-1-14. We affirm.

We recount the facts in the light most favorable to Bass except when the body camera "video actually proves that the plaintiff's version of the facts cannot be true." *Brooks v. Miller*, 78 F.4th 1267, 1271–72 (11th Cir. 2023). Officer Jones initiated a traffic stop and advised Bass that he was being stopped because he failed to stop at a flashing red light. *See* Ga. Code Ann. § 40-6-23(1). Officer Jones stated that Bass was slurring his words. He asked Bass to stop the car engine seven times but, as the video records, Bass did not turn the engine off. Officer Jones reached through the window, unbuckled Bass's seatbelt, and placed the car in park. He then asked Bass to step out of the car multiple times but, as the video records, Bass asked what he needed to step out for and did not exit. Officer Jones grabbed Bass's arm, pulled him from the car, and handcuffed him. A passenger remained in the car. Officer Jones decided to place Bass in the police car because he was by himself, felt his safety was

threatened by the presence of the passenger, and wanted to know where Bass was.

He walked Bass to his patrol car and told him to have a seat in the back of the car. But, as the video records, Bass did not step into the car and stated that he felt uncomfortable. Officer Jones again told Bass to have a seat, and when Bass stated he wanted to talk to a supervisor, Officer Jones stated he would speak to a supervisor in a minute. When Bass spoke again, the video records Officer Jones putting his hand on Bass's chest and shoving him into the car's backseat. The video does not record whether Bass hit his head on the car, but it does record Officer Jones pushing him into the backseat of the car on his back, not slamming his head on the metal divider that separated the front and backseat. While we accept Bass's version of the facts to the extent that he asserts he hit his head on the car because the video does not record whether his head hit the car, we rely on the body camera footage recording that Officer Jones pushed him into the backseat and did not slam his head into the metal divider. *See Brooks*, 78 F.4th at 1271–72. Officer Jones then picked up Bass's feet and moved them into the patrol car and shut the car door. Bass eventually sat himself upright, spoke to several other officers that arrived, and did not complain of any injury. He was given a field sobriety test that determined he was not under the influence of alcohol and was allowed to leave with a citation for the traffic violation. He later received treatment for a concussion and problems with his vision based on this incident and prior injuries.

Bass filed a complaint alleging claims of excessive force in violation of the Fourth Amendment, 42 U.S.C. § 1983, and assault and battery under state law, Ga. Code Ann. §§ 51-1-13, 51-1-14, and requested punitive damages. Officer Jones moved for summary judgment. He argued that Bass had not established a Fourth Amendment violation because his use of force was *de minimis* and reasonable under the circumstances. He also argued that he was entitled to qualified immunity because he had not violated Bass's clearly established constitutional rights. He argued that he was entitled to official immunity as to the state law claims because Bass presented no evidence that he acted with actual malice or intent to cause injury. Bass responded that the force was excessive and that Officer Jones violated clearly established law because he was not suspected of committing a serious crime, was handcuffed and posed no threat, offered no active resistance, and suffered severe injuries. As to official immunity, Bass argued that providing him with a warning was a ministerial duty that did not require him to establish actual malice because the City of Atlanta's use of force policy required Officer Jones to warn him before using force.

The district court granted Officer Jones's motion for summary judgment. It ruled that Officer Jones was entitled to qualified immunity because Bass failed to establish a violation of the Fourth Amendment. It determined that Bass failed to follow commands several times before Officer Jones pushed Bass into the car to separate him from the passenger and that although it was unclear in the video whether Bass's head struck the car, Officer Jones did not slam Bass's head against metal bars. It also ruled that Officer Jones was

entitled to official immunity on his state law claims because the use of force was a discretionary act, and Bass did not allege Officer Jones acted maliciously or with intent to cause injury.

"We review a district court's grant of summary judgment *de novo*, viewing all the evidence, and drawing all reasonable factual inferences, in favor of the nonmoving party." *Richmond v. Badia*, 47 F.4th 1172, 1179 (11th Cir. 2022) (citation and internal quotation marks omitted).

The district court did not err in ruling that Officer Jones was entitled to qualified immunity because Bass did not establish a violation of the Fourth Amendment. Qualified immunity protects a government official from suit in their individual capacity unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Charles v. Johnson*, 18 F.4th 686, 698 (11th Cir. 2021) (citation and internal quotation marks omitted). After an official establishes that he was acting within his discretionary authority, the plaintiff bears the burden to establish that the official violated a clearly established constitutional right. *Id.* In determining whether the use of force was objectively reasonable under the Fourth Amendment, we look at the totality of the circumstances and consider "the fact pattern from the perspective of a reasonable officer on the scene with knowledge of the attendant circumstances and facts." *Id.* at 699 (citation and internal quotation marks omitted). We consider "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is

actively resisting arrest or attempting to evade arrest by flight." *Id.* (citation and internal quotation marks omitted). "We also consider the justification for the application of force, the relationship between the justification and the amount of force used, and the extent of any injury inflicted." *Richmond*, 47 F.4th at 1182. "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Charles*, 18 F.4th at 699 (citation and internal quotation marks omitted).

Officer Jones did not use excessive force when he pushed Bass into the backseat of the police car. Officer Jones had a valid law enforcement reason for placing Bass in the patrol car. He was by himself and felt his safety was threatened by having Bass outside of the car with a passenger present. The push into the patrol car was proportional to the need to secure Bass in the car. Because Bass was refusing to obey his commands to step into the car, Officer Jones had to put Bass into the car himself. And Bass had previously refused to comply with his commands to turn off and step out of the car, so a reasonable officer in Officer Jones's position could have assumed Bass would fail to comply with his command to step into the patrol car. *See id.* Although Bass argues that he was handcuffed and not actively resisting, he was disobeying Officer Jones's commands to step into the car. And we have held much more serious forms of force to be reasonable when a suspect is ignoring commands, even when they are handcuffed. *See Zivojinovich v. Barner*, 525 F.3d 1059, 1072–73 (11th Cir. 2008) (holding that use of a taser when a suspect was handcuffed was not excessive when he had

repeatedly ignored police instructions and acted belligerently toward police).

Contrary to Bass's argument that he did not have time to comply before Officer Jones pushed him, he had time to state he was uncomfortable and that he wanted a supervisor. Bass also argues that his crime was a misdemeanor such that no force was justified. Although "less force is appropriate for a less serious [offense]," *Lee v. Ferraro*, 284 F.3d 1188, 1198 (11th Cir. 2002), we have "made clear that some use of force by a police officer when making a custodial arrest is necessary and altogether lawful, regardless of the severity of the alleged offense," *Durruthy v. Pastor*, 351 F.3d 1080, 1094 (11th Cir. 2003). Bass also argues that his serious injuries made the force excessive. Even accepting as true that Bass hit his head on the car and received treatment for a head injury such that the force might not be classified as *de minimis*, the "core judicial inquiry" is the "nature of the force," not the "quantity of injury." *Saunders v. Duke*, 766 F.3d 1262, 1270 (11th Cir. 2014) (citation and internal quotation marks omitted, alterations adopted); *see also Rodriguez v. Farrell*, 280 F.3d 1341, 1353 (11th Cir. 2002) ("[R]easonable force does not become excessive force when the force aggravates (however severely) a pre-existing condition the extent of which was unknown to the officer at the time.").

The precedents Bass cites are distinguishable. In *Patel*, we held that an officer's use of force in sweeping Patel's legs out from under him while his arms were being held such that he hit the ground face first and was permanently paralyzed was drastically in

excess of any force warranted by the minor movements Patel made away from the officer. *Patel v. City of Madison, Ala.*, 959 F.3d 1330, 1335, 1339–42 (11th Cir. 2020). In *Stephens*, we held that the use of force was excessive when an officer hit Stephens's chest and slammed him backward against the car door frame even though he was under control, not resisting, and obeying commands. *Stephens v. DeGiovanni*, 852 F.3d 1298, 1308, 1322–28 (11th Cir. 2017). And in *Lee*, we held an officer engaged in excessive force when he slammed Lee's head against a truck without a legitimate law enforcement reason, and she did not resist or attempt to flee. *Lee*, 284 F.3d at 1198. In contrast to those instances of disproportionate force against compliant suspects, Officer Jones pushed Bass into the backseat of the patrol car after Bass repeatedly failed to comply with his command to step into the car. The force was proportionate to Officer Jones's legitimate need to place Bass in the police car and separate him from the passenger. Because Officer Jones has "not violated the law at all, he certainly has not violated clearly established law." *Rodriguez*, 280 F.3d at 1345 (citation and internal quotation marks omitted).

The district court also did not err in ruling that Officer Jones was entitled to official immunity for the state law claims. Bass argues that he was not required to prove actual malice or intent to injure because providing a warning before using force is a ministerial duty required by City policy. Under Georgia law, officers are not entitled to official immunity for discretionary acts performed with actual malice or intent to injure or ministerial acts negligently performed. *Roberts v. Mulkey*, 808 S.E.2d 32, 35 (Ga. Ct. App. 2017);

GA. CONST. art. I, § 2, para. IX(d). A ministerial act is "one that is simple, absolute, and definite, arising under conditions admitted or proved to exist, and requiring merely the execution of a specific duty." *Roberts*, 808 S.E.2d at 35 (citation and internal quotation marks omitted). A discretionary act "calls for the exercise of personal deliberation and judgment, which in turn entails examining the facts, reaching reasoned conclusions, and acting on them in a way not specifically directed." *Id.* (citation and internal quotation marks omitted). When a "written policy requires the public official to exercise discretion in the implementation of the written policy, the policy does not require the performance of a ministerial duty." *Grammens v. Dollar*, 697 S.E.2d 775, 778 (Ga. 2010).

Although the City's policy states that "[w]arnings should be given to the suspect . . . when it does not pose a threat to the safety of the employee," and Officer Jones testified that a warning would not have threatened his safety, the policy is not mandatory. Officer Jones had to exercise his discretion in determining whether a warning would threaten his safety. Because he had to exercise his discretion in determining whether to issue a warning, the policy did not impose a ministerial duty. *See id.* And Bass does not argue that the use of force is a ministerial act. Because Bass provided no evidence that Officer Jones acted with actual malice or intent to injure, he was entitled to official immunity. *See Roberts*, 808 S.E.2d at 35.

We **AFFIRM** the grant of summary judgment in favor of Officer Jones.